Daniel I. Barness
   SBN 104203, daniel@spiromoss.com
**SPIRO MOSS BARNESS LLP**
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064
Telephone:  (310) 235-2468
Facsimile:   (310) 235-2456

Attorneys for Plaintiffs Amy Eberly, Erin Goodman, and Jamie Kirk, individually and
on behalf of all others similarly situated

# UNITED  STATES BANKRUPTCY COURT

# CENTRAL  DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | CASE NO.   06-12579 KT |
| OWNIT MORTGAGE SOLUTIONS, INC., | Chapter 11 |
| | ADV.  NO.  071212 KT |
| Debtor. | [CLASS ACTION] |
| _____ | **PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(B)(6); MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"; DECLARATION OF DANIEL I. BARNESS** |
| AMY EBERLY, ERIN GOODMAN AND JAMIE KIRK, individually and on behalf of all others similarly situated, | |
| Plaintiffs | |
| v. | [Request for Judicial Notice filed concurrently] |
| OWNIT MORTGAGE SOLUTIONS, INC., | Date:        November 29, 2007 |
| | Time:        2:00 p.m. |
| Defendant. | Place:       Courtroom 301 |
| _____ | |

1

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**

# TABLE OF CONTENTS

I.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

II.  Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

III. Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

    A.   The Important Public Policy Behind the WARN Act and
        Its Provisions for Damages, and Behind California Labor
        Code Section 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

    B.   The Complaint Meets the Standards for Adequate Pleading
        Under FRCP Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

    C.   The Filing of the Complaint, Rather than Prosecuting a Proof
        of Claim is Procedurally Proper . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

    D.   The Contentions in the Motion Regarding the Purported Attempt to
        Bypass the Court's Discretion Are Without Merit. . . . . . . . . . . . . . . .   13

    E.   The Class Claims are Timely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

        1.   Administrative Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

            a.   Administrative Claims . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

        2.   Priority Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

    F.   The Request for Attorney's Fees and Costs are
        Appropriately Pled in the Complaint . . . . . . . . . . . . . . . . . . . . . . . . .   23

IV.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

Declaration of Daniel I. Barness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aargus Polybag Co. v. Commonwealth Edison Co.,*
172 Bankr. 586, 589 (N.D. Ill. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Abercrombie v. Hayden Corp. (In re Abercrombie),*
139 F.3d 755 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Albemarle Paper Co. v. Moody,*
422 U.S. 405, 442-43, 95 S.Ct. 2362, 2385 (1975) . . . . . . . . . . . . . . . . . . . 11

*Balistreri v. Pacifica Police Dept.,*
901 F.2d 696, 699 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bentley v. Arlee Home Fashions, Inc.,*
861 F.Supp 65 (E.D.Ark.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Blackburn v. City of Marshall,*
42 F.3d 925, 931 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bledsoe v. Emery Worldwide Airlines,*
258 F. Supp. 2d 780 (S.D.Ohio, 2003) . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Cahill v. Liberty Mut. Ins. Co.,*
80 F.3d 336, 337-38 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Campbell v. City of San Antonio*
F.3d 973, 975 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cashman v. Dolce International/Hartford, Inc.,*
225 F.R.D. 73 (D. Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Certified Air Technologies, Inc.,*
300 Bankr. 355 (Bankr. C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Christian Life Ctr. Litig. Defense Comm. v. Silva (In re Christian Life Center),*
821 F.2d 525, 533 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Cisneros v. United States (In re Cisneros),*
994 F.2d 1462, 1465 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cruz v. Robert Abbey, Inc.,*
778 F. Supp. 605 (E.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dade County School District v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
53 Bankr. 346, 352 (Bankr. S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . 11

*Everest and Jennings, Inc. v. American Motorists Insurance Company,*
23 F.3d 226, 228 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Finnan v. L.F. Rothschild & Co.,*
726 F. Supp. 460, 465 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Grimmer v. Lord, Day & Lord,*
937 F. Supp. 255 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re American Capital Strategies, Ltd.,*
2006 WL 1639092 (M.D.Tenn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Birting Fisheries, Inc.,*
92 F.3d 939, 940 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Bulldog Trucking, Inc.,*
226 Bankr. 174 (W.D. N.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Bulldog Marine Corp.,*
386 F.3d 824 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Charter Co.,*
876 F.2d 866 (11th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Dana Corp.,*
2007 Bankr. Lexis 1934 (Bankr. S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . 18, 19

*In re Davis,*
81 F.3d 134, 77 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Ephedra Prods. Liab. Litig.,*
329 Bankr. 13-14 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"

*In re Jamesway Corp.*
    235 Bankr. 329 (Bankr. S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . 14, 24

*In re Jamesway Corp.,*
    242 Bankr. 130, 132-134 (Bankr. S.D.N.Y. 1999), . . . . . . . . . . . . . . . . . . 24

*In re Pacific Atlantic Trading Co.,*
    33 F.3d 1064, 25 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Vecchio,*
    20 F.3d 555 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*In re World Sales, Inc.,*
    183 Bankr. 872, 878 (9th Cir.BAP 1995) . . . . . . . . . . . . . . . . . . . . . 24, 26

*In re Yadidi,*
    274 Bankr. 843, 849 (9th Cir. BAP 2002) . . . . . . . . . . . . . . . . . . . . . . . 9

*In the Matter of American Reserve Corp.,*
    840 F.2d 487 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jones v. Kayser-Roth Hosiery,*
    748 F. Supp. 1276 (E.D. TN. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jurcev v. Central Community Hospital,*
    7 F.3d 618 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Loehrer v. McDonnel Douglas Corp.*
    No. 91-1747 C(2), 1992 U.S. Dist. LEXIS 22555
    (E.D.Mo. Oct. 5, 1992), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*New Orleans Clerks and Checkers Union Local 1497 v. Ryan-Walsh Inc.*
    1994 U.S. District LEXIS 2403 (E.D. La. 1994) . . . . . . . . . . . . . . . . . . 13

*Pearson v. Component Technology Corp.,*
    247 F.3d 471 (3rd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Plaintiffs." Rosenbaum v. Syntex Corp.,*
    95 F.3d 922, 926 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Reid v. White Motor Corp.,*
    886 F.2d 1462 (6th Cir.1989), cert. denied, 494 U.S. 1080,
    110 S.Ct. 1809, 108 L.Ed.2d 939 (1990) . . . . . . . . . . . . . . . . . . . . . . 15

*Reyes v. Greater Texas Finishing Corp.,*
    19 F. Supp. 2d 709 (W.D. Texas 1998) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Rosenbaum v. Syntex Corp.,*
    95 F.3d 922, 926 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Siegel v. Federal Home Loan Mortg. Corp.,*
    143 F.3d 525, 533 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Welt v. Conston Corp. (In re Conston),*
    181 Bankr. 175, 176 (Bankr. D. Del. 1995) . . . . . . . . . . . . . . . . . . . . 11

## <u>STATE CASES</u>
*Gould v. Maryland Sound Industries, Inc.*
    (1995) 31 Cal.App.4th 1137, 1147, 37 Cal. Rptr.2d 718 . . . . . . . . . . . . 7, 8

## <u>FEDERAL STATUTES</u>
Bankruptcy Code § 503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Bankruptcy Code § 507 . . . . . . . . . . . . . . . . . . . . . . . . 5, 17, 22, 23, 26

Bankruptcy Code § 546(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Bankruptcy Code § 726(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Bankruptcy Code § 502(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 2075 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

29 U.S.C. §§ 2101 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

WARN Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**

**STATE STATUTES**
California Labor Code § 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
California Labor Code § 202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
California Labor Code § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
California Labor Code § 216 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
California Labor Code § 1175 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
California Labor Code § 1199 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
California Labor Code § § 1400 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**FEDERAL RULES**
    Federal Rules of Civil Procedure
Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15
Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    Federal Rules of Bankruptcy Procedure
Rule 3002(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Rule 3003(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Rule  9006(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Rule 9014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**OTHER AUTHORITIES**
Analyzing the Inadequacies of Employee Protections in Bankruptcy, Matthew L.
Seror, Southern California Interdisciplinary Law Journal, Fall 2003 . . . . . . . . . . . . 7
Moore's Federal Practice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Norton Bankruptcy Law and Practice
    2d. West Publishing Co. (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 22
Wright & Miller . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**

# I.  INTRODUCTION

Amy Eberly, Erin Goodman and Jamie Kirk ("Plaintiffs"), on behalf of themselves and all other similarly situated persons, submit this Opposition to the "Motion to Dismiss under FRCP 12(b)(6); Motion to Strike Request for Attorney's Fees and Costs" (the "Motion").

This action seeks declaratory relief and damages for Defendant's failure to **give any written notice** to its affected employees of the mass termination of their employment and its failure to immediately pay them their final wages.   The claims arise from Debtor's violation of the notice provisions of  the  Worker Adjustment and Retraining Notification Act  [29 U.S.C. §§ 2101, et seq. and California Labor Code §§ 1400 et seq.]  (collectively, the "WARN Act"), which require that, prior to effecting a mass layoff or plant closing, an employer must give not fewer than sixty days' written notice to the effected employees and to certain governmental agencies.  The purpose of the 60-day WARN notice requirement is to lessen the financial trauma resulting from a sudden termination of employment.  The damages provisions are aimed at compensating the injured employee for his or her employer's failure to give the required notice.

The action also seeks remedies arising from Defendant's failure immediately to pay outstanding wages due upon termination of its employees.

Defendant's failure to provide the required employee termination notice and its failure to pay final wages has caused widespread economic damage to hundreds of working people, many with dependants, who are the **least able** to bear the economic loss.

The Motion, brought by Debtor/Defendant (the former employer),  seeks an early termination of the claims of its former employees   The Motion is, however, not supported by law or facts, and should be denied:

1.     The Motion fails to establish that the pleading requirements of F.R.Civ.Proc. 8 are <u>not</u> met by the Complaint.  Indeed, all of the requirements of Rule

8 **are** met: The Complaint pleads facts which are sufficient to state a claim for relief. It contains sufficiently pled facts to put Defendant on notice regarding the nature (statutory basis) of Plaintiffs' claims; the facts and circumstances giving rise to such claims; and the relief sought. Additionally, Defendant has not introduced any evidence which might be permissible under Rule 12(b)(6) to support a dismissal.

2. The Motion is wrong in its assertions that the Adversary Proceeding is procedurally improper, and that the only proper vehicle for asserting the claims at issue is through the claims process. Applicable authorities are to the contrary.

3. The Motion is wrong in its assertions that the Adversary Proceeding is aimed at bypassing the Court's discretion to implement FRCP 23 procedures. Applicable authorities are to the contrary.

4. The Motion is wrong in its assertion that the claims asserted in the Complaint (the"Class Claims") are time-barred. Applicable authorities are to the contrary.

5. The Motion is wrong in its assertion that Plaintiffs' request for attorneys fees should be stricken. Applicable authorities are to the contrary.

Significantly, the Motion cites **not a single case** involving claims under the WARN Act or under the California Labor Code to support its arguments that such claims may not be asserted through a class action adversary proceeding.

Similarly, no relevant authority is cited by Defendant that a general bar date order may bar priority or administrative expense claims, or that attorneys' fees and costs, which are sought under "fee shifting statutes" such as those entailed within the Class Claims, should not be accorded the same level of priority as the underlying claims.

For these reasons, as expanded below, the Motion should be denied.

3

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**

## II.  STATEMENT OF FACTS

The following facts are established in part by the record of these proceedings; by the matters contained in the Request for Judicial Notice filed concurrently herewith; and by the Declaration of Daniel I. Barness:

This Chapter 11 case was commenced by the filing of a voluntary petition on December 28, 2006  (the "Petition Date").   On or about December 5, 2006, prior to the Petition Date, Defendant, with as little as two hours' notice, announced to its employees that their employment was terminated effective immediately, and that they should clean out their desks and leave.   In the case of the most, if not all, of Defendant's employees, the termination was affected suddenly, and without payment of final wages.  [Barness Declaration]  This caused tremendous economic upheaval and emotional distress, in the lives of the affected employees.  [Barness Declaration].

This Adversary Proceeding was commenced on September 12, 2007.  The Complaint, styled as a class action, states claims for (1) Damages for Failure to Timely Pay Wages; (2)  Damages Pursuant to the Warn Act; and (3) Declaratory Relief that certain components of such claims are entitled to administrative expense treatment pursuant to section 503(b)(1)(A)(ii).

Prior to the commencement of the Adversary Proceeding, Defendant served a Notice of Claims Bar Date(the "Bar Date Notice"), [RJN, Exhibit "A"], setting June 15, 2007 as the Bar Date.    The Bar Date Notice referred to  an order setting the Bar Date (the "Bar Date Order), which is attached as RJN, Exhibit "B".  Neither the Bar Date Notice nor the Bar Date Order which was attached thereto makes any mention of claims arising under section 503(b)(1)(A)(ii).[1]

The Bar Date Order contains a clerical error, in that it refers to the Bar Date as in connection with claims arising before December 28, 200**7.**  [RJN, Exhibit "A"]

---

[1]     As discussed more fully below, even if the Bar Date Notice or Order **did** mention such claims, the outcome of this Motion would not be affected.

On or about September 15, 2007, Debtor filed and served its Second Amended Disclosure Statement in Support of Debtor's Second Amended Plan (the "Disclosure Statement"). The Disclosure Statement contains the following description of the Class Claims:

> (vi) "Finally, on September 6, 2007, the Debtor was notified that an adversary proceeding may be commenced against the Debtor on behalf a proposed class of former employees of the Debtor ("Proposed Claimants") seeking recovery of, inter alia, (i) not less than $2.4 million for alleged violations of the federal Workers Adjustment and Retraining Notification (WARN) Act and the California counterpart thereof and (ii) damages (Wage Continuation) under California Labor Code section 203 of not less than $1.5 million for a total claim of $3.9 million (the "Asserted WARN-Related Claims"). Based on information and belief, Proposed Claimants intend to seek administrative expense priority status under Bankruptcy Code section 503(b) of not less than $2.035 million of their total claim and priority status under Bankruptcy 507(a)(3) of not less than $1.870 million of the total claim. The Debtor reserves all rights with respect to the foregoing and intends to dispute the Proposed Claimants' claim on substantive and procedural grounds." [Disclosure Statement, p.32:11-22, RJN, Exhibit "C".]

As shown below, the Motion does not support dismissal of the Complaint. All relevant authorities support denial of the Motion. Alternatively, if the Court is inclined to grant of the Motion by dismissing the Complaint, Plaintiffs respectfully request that the Court defer such action pending a motion by Plaintiffs pursuant to Rule 9006(b)(2).[2]

## III. DISCUSSION

**A.    The Important Public Policies Behind the WARN Act and its provisions for Damages, and Behind California Labor Code section 203.**

At the core of this dispute are unpaid wages owed to hundreds of working men and women and damages arising from Debtor's upheaval of their lives by failing to give them required notice of a mass layoff by which their employment was terminated. In considering the Motion, the Court is also asked to be mindful of the wholesale

---

[2]    Unless otherwise indicated, all further references herein to rules are to the Federal Rules of Bankruptcy Procedure.

5

disruption of people's lives and livelihoods which laws such as the WARN Act are designed either to prevent or recompense.   Recovery under the WARN Act is aimed at mitigating such disruption and damage by effectively compensating working people for a maximum of 60 days of back pay  (corresponding to the notice period which they were supposed to have been provided under the Act).

Norton describes the underlying policy behind the congressional grant of priority to unpaid wages earned shortly before a bankruptcy case:

It is to "enable employees displaced by bankruptcy to secure, with some promptness, the money directly due to them in back wages, and thus to alleviate in some degree the hardship that unemployment usually brings to workers and their families."[Citations omitted.]Judge Learned Hand, in a case under the Bankruptcy Act, observed that "the statute was intended to favor those who could not be expected to know anything of the credit of their employer, but must accept a job as it was." [Citations omitted.] Besides the goal of protecting unwary employees, the wage priority is designed to encourage employees not to abandon a failing business, thus enhancing the business' prospects for financial recovery.  2 Norton Bankr. L. & Prac. 2d § 42:38, West Publishing Co. 2007 .

With regard to WARN Act claims, another commentator has observed:

*"In this age of corporate scandals and mega-bankruptcies, hardly a day passes without reports of corporate corruption or downsizing.  Much is made of the loss of investor confidence, the lack of corporate accountability, or the hundreds of millions of investor dollars lost.  Yet the effect such events have on employees is largely overlooked.  Employees are the innocent bystanders caught up in the whirlwind.  With their jobs and financial well being at risk, there is no doubt that employees have a great deal at stake.  The WARN Act attempts to give employees greater protections by requiring employers to provide notice of any corporate restructuring that would terminate their employment.* **The purpose of doing so is to provide employees with the time**

6

1     *necessary to prepare themselves for the potential loss of job and thus income*
2     *that a change in corporate structure may cause them. Therefore, at the heart*
3     *of the WARN Act is the notice requirement. This notice requirement is*
4     *intended to provide employees with sufficient time to prepare for the*
5     *inevitable and probable loss of their jobs, rather than being faced with a*
6     *locked office building and being informed at 9:00 a.m. that as of that day*
7     *their services would no longer be needed.* The exceptions to this notice
8     *requirement are thus few and specific.*"

9     Analyzing the Inadequacies of Employee Protections in Bankruptcy, Matthew

10    L. Seror, Southern California Interdisciplinary Law Journal, Fall 2003 [Emphasis

11    added].

12          As for remedies sought for Defendant's failure immediately to pay terminating

13    wages, the matter of unpaid wages raises important policy issues as well. One need

14    only examine provisions in the California Labor Code to realize that "the prompt

15    payment of wages due an employee is a fundamental public policy of this state."

16    *Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1147, 37 Cal.

17    Rptr.2d 718. For example, Labor Code sections 201 and 202 set very short time limits

18    for payment of wages to employees who have been discharged or who have

19    voluntarily left their jobs. Other Labor Code sections also demonstrate the

20    Legislature's belief that an employee's wages are highly important. Section 216 makes

21    it a misdemeanor for an employer to willfully not pay wages that are due if the

22    employer has the ability to pay and a demand for the wages has been made. Section

23    1175 makes it a misdemeanor to neglect or refuse to furnish to the Industrial Welfare

24    Commission information on an employee's wages. Section 1199 makes it a

25    misdemeanor to fail to adhere to the Commission's regulations regarding minimum

26    wages paid. "[T]he Legislature's decision to criminalize certain employer conduct

27    reflects a determination that the conduct affects a broad public interest." *Gould, supra*,

28    31 Cal. App.4th at p. 1148. Great importance is also obviously attached to

7

1    uncompensated labor.

2         As shown, issues of required mass layoff/termination notice and of timely

3    employee compensation are of **great concern** in the nation and in the State of

4    California.  Defendant's improper conduct with respect to such matters lies at the heart

5    of the Complaint and the Class Claims.

6         Defendant, however, seems to see this dispute in starkly different terms:  In its

7    hectoring about "extreme" prejudice to Defendant and other parties in interest

8    [Motion, p.15:24 -16:2], Defendant appears somewhat callous when portraying the

9    members of the putative class of improperly-laid-off employees as  garden variety

10   creditors who should, in effect, be viewed no differently than trade vendors, lenders

11   and other types of commercial creditors who took a calculated risk of default when

12   deciding to do business with the Debtor.  Worse, Defendant attempts to vilify its

13   former workers as seeking to take an unfair advantage to the prejudice of Defendant

14   and its other creditors. Id.

15        Although, as discussed below, there are ample grounds to deny the Motion on

16   strictly procedural and legal grounds, the Court, in making the determinations which

17   are germane to the Motion, is also asked to bear these important considerations in

18   mind.  The Court is also asked to be mindful that, on the Plaintiffs' side, this matter

19   involves people whom congress and the California Legislature, in their wisdom,

20   determined to single out for special protections.

21

22        **B.**     **The Complaint Meets The Standards for Adequate Pleading Under**

23               **FRCP Rule 8**

24        Rule 8(a)(1) of the Federal Rules of Civil Procedure provides:  "a pleading

25   which sets forth a claim for relief . . . shall contain . . . (2) a short and plain statement

26   of the claim showing the pleader is entitled to relief  . . . "

27        A complaint should be dismissed under Rule 12(b)(6) **only** when it is beyond

28   doubt that the plaintiff **can prove no set of facts in support of his or her claim**.

8

[See, *Everest and Jennings, Inc. v. American Motorists Insurance Company*, 23 F.3d 226, 228 (9th Cir. 1994).] "All allegations of material fact are taken as true and construed in the light most favorable to Plaintiffs." *Rosenbaum v. Syntex Corp.*, 95 F.3d 922, 926 (9th Cir. 1996). Dismissal is proper where there is an absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990).

In considering a motion under Fed.R.Civ.P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff; accept all well-pleaded factual allegations as true; and determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.1996). *Campbell v. City of San Antonio*, F.3d, 973, 975 (5th Cir. 1995); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

The plaintiff's pleading "must contain either direct allegations on every material point necessary to sustain recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell*, 43 F.3d at 975 (quoting 3 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE; CIVIL 2d Sec. 1216 at 156-159 (footnote omitted). "'[A] statement of facts that merely creates a suspicion that the pleader might have a right of action is insufficient." *Id.* (Quoting WRIGHT & MILLER at 163). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . " *Id.* (Quoting 2A MOORE'S FEDERAL PRACTICE par. 12.07 at 12-91 (footnote omitted)).

The liberal pleading standards under FRCP 8 were reaffirmed in *In re Yadidi*, 274 Bankr. 843, 849 (9th Cir. BAP 2002): "Pleading in federal practice is no longer a game of skill in which one misstep by counsel can be fatal. The key concept is notice. Clarification, greater particularity, and other refinements in pleadings are accomplished through a combination of discovery, pretrial orders, and liberal toleration of amendments."

Other than a brief comment contained in a footnote [Motion, Note 4, p.4:27-28][3], the Motion does not criticize the Complaint in terms of failure to state a claim or any Rule 8 pleading deficiency, so it should not be necessary to dwell on such matters.

Under the foregoing authorities, the Complaint sufficiently pleads the Class Claims, a point which Defendant appears to concede.

Alternatively, in the event the Court finds that Complaint deficient under the foregoing standards, Plaintiffs respectfully request that the Court grant leave to amend the Complaint as appropriate.

**B.      The Filing of the Complaint, Rather than Prosecuting a Proof of Claim is Procedurally Proper.**

The Motion argues that the present Adversary Procedure is procedurally improper.  It states: "Filing an adversary proceeding, let alone a class action lawsuit, is not the correct procedure for asserting [an] unsecured, priority or administrative claim in a bankruptcy case"  and, it argues, the only correct way to do so is through the filing

---

[3]      In Note 4 of the Motion, Defendant points out that "the Complaint fails to establish that certain thresholds [regarding the minimum number of total employees that must be employed in order for a particular facility to be a "covered facility" under the WARN Act] ever applied during the relevant time periods".  [Motion, p.4:27-28] It is known to Plaintiffs that at least two of the "California facilities" would be "covered facilities under the WARN Act.  [Barness Declaration]  As to the remaining California Facilities, the number of employees employed at each such facility will be developed through discovery.  At any rate, Defendant has failed to introduce any evidence, or even to argue, that **none** of the California Facilities was a "covered facility" under the WARN Act.

of proof of claim and the claim allowance/objection process. [Motion, p.11:3-16]

In its discourse on this point, Defendant cites to: *Dade County School District v. Johns-Manville Corp. (In re Johns-Manville Corp.).*, 53 Bankr. 346, 352 (Bankr. S.D.N.Y. 1985) [Motion, pp.12-14]. *Manville*, like the other two cases cited by Defendant[4], however, is inapplicable, because it did not concern a WARN Act claim, and it rejected the concept of class claims in bankruptcy cases, a position which is in conflict with the Ninth Circuit's view as established by *In re Birting Fisheries, Inc.*, 92 F.3d 939, 940 (9th Cir. 1996) ("Birting Fisheries")[5]

There are at least three separate bases for a determination that the present adversary proceeding is properly maintained:

First, claims under the WARN Act sound in equity, and so are expressly covered by Rule 7001(7) -- "a proceeding to obtain an injunction **or other equitable relief** . . ." Thus, In a case which is directly on point, the court in *Cain v. Inacom (In re Inacom) WL 1819997, at *1 (Bkrtcy.D.Del. 2001)*, ruled, in a class action, that a WARN Act claim could be pursued as an adversary proceeding against a Chapter 11 debtor. In *Inacom*, the court denied a 12(b)(6) motion by the debtor, which contended, as Defendant contends here, that WARN Act claims could properly be asserted only in the context of a claim adjudication proceeding under Rules 3007 and 9014. The *Inacom* court, pointed to conflicting unpublished opinions -- one of which[6] held WARN actions to be equitable in nature, and the other holding the opposite. The *Inacom* court found the second case, *Loehrer v. McDonnell Douglas **Corp.**,* No. 91-1747 C(2), 1992 U.S. Dist. LEXIS 22555 (E.D.Mo. Oct. 5, 1992), to be the more persuasive. It followed *Loehrer,* because that opinion cited the concurring opinion of

---

[4] *In re Ephedra Prods. Liab. Litig.*, 329 Bankr. 13-14 (S.D.N.Y. 2005) and *Welt v. Conston Corp. (In re Conston)*, 181 Bankr. 175, 176 (Bankr. D. Del. 1995)

[5] cited in Motion at pp. 13, 15

[6] *Bentley v. Arlee Home Fashions, Inc.,* 861 F.Supp 65 (E.D.Ark.1994)

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**

Justice Rehnquist in *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 442-43, 95 S.Ct. 2362, 2385 (1975) (where "the court retains substantial discretion as to whether or not to award back pay . . . the nature of the jurisdiction which the court exercises is equitable."). Additionally, *Loehrer* found that an award of back pay under the WARN Act is equitable relief, because such an award is intertwined with the equitable relief of ERISA benefits." *Id.* at 2.

In turn, the reasoning and conclusions of *Loehrer* and *Inacom* that WARN Act claims sound in equity were adopted by *Bledsoe v. Emery Worldwide Airlines*, 258 F.Supp.2d 780,792 (S.D.Ohio, 2003), which also held WARN Act claims to be equitable in nature (and for that reason, found that no jury trial right attaches to a WARN Act claim.)

Second, even in the context of a contested matter, a claim objection proceeding can "turn into" an adversary proceeding, if it is "joined with a demand for relief of the kind described d in Rule 7001 (Rule 3007). Thus, if, on an objection to the claim either party to this dispute were to seek a judicial declaration regarding the application of section 503(b)(1)(A)(ii), for example, the contested matter would become an adversary proceeding.

Third, in addition to sounding in equity because it entails ERISA remedies; and in addition to the fact that even if born as a contested matter it could be transformed into an adversary proceeding under Rule 3007; the present adversary proceeding also satisfies sub-paragraph 9 of Rule 7001, in that it seeks declaratory relief on a claim for money. It seeks **declaratory relief --** a determination that at least a portion of the WARN Act and LC section 203 claims are to be accorded administrative expense status under section 503(b)(1)(A)(ii) and priority treatment under section 507(a)(4).

Finally, as discussed at further length below, the use of an adversary proceeding is also the most procedurally efficient under the circumstances presented here.

**C.     The Contentions in the Motion Regarding the Purported Attempt to Bypass the Court's Discretion Are Without Merit.**

Over the course of almost two decades, courts have regularly been holding that the WARN Act is "particularly amenable to class litigation." *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989). [See also *Grimmer v. Lord, Day & Lord*, 937 F. Supp. 255 (S.D.N.Y. 1996) ("[T]he WARN Act provisions lend themselves to class action because they provide for limited recovery."); *New Orleans Clerks and Checkers Union Local 1497 v. Ryan-Walsh, Inc.*, 1994 U.S.Dist. LEXIS 2403 (E.D. La. 1994)( "the instant proceeding, a WARN action, falls squarely within the criteria for sanctioning a class.").]

Thus, violations of the WARN Act have given rise to numerous class action cases in which class certification is routinely granted. [See, *e.g.*, *Pearson v. Component Technology Corp.*, 247 F.3d 471 (3rd Cir. 2001) (former employees brought representative action on behalf of other employees against employer's secured creditor under the WARN Act); *Jurcev v. Central Community Hospital*, 7 F.3d 618 (7th Cir. 1993) (employees who lost their jobs when hospital closed brought, on behalf of other former employees, an action against the hospital under the WARN Act); *Jones v. Kayser-Roth Hosiery*, 748 F. Supp. 1276 (E.D. TN. 1990) (former employees brought action under WARN Act on behalf of other employees); *Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780 (S.D. Ohio 2003); *Cashman v. Dolce International/Hartford, Inc.*, 225 F.R.D. 73 (D. Conn. 2004); *Cruz v. Robert Abbey, Inc.*, 778 F. Supp. 605 (E.D.N.Y. 1991); *Reyes v. Greater Texas Finishing Corp.*, 19 F. Supp. 2d 709 (W.D. Texas 1998).

In published decisions, bankruptcy courts have also followed this trend, and denied motions to dismiss, and/or held in favor of class certification of WARN claim prosecutions: [See, *e.g., In re Inacom,* WL 1819997*); In re American Capital Strategies, Ltd.,* 2006 WL 1639092 (M.D.Tenn. 2006); *In re Jameway* 235 Bankr. 329 (Bankr. S.D.N.Y. 1999).]

Although Plaintiffs by no means gainsay the role of the Court's discretion in determining whether to apply the Rule 23 procedures in the context of a contested matter, when it comes to WARN Act actions, the trail is well-trodden already, even within the bankruptcy world, so the Defendant's argument that the adversary proceeding is used is being used in this case as a device to take away the Court's discretion simply does not ring true.

It also happens that there are particular efficiencies and matters of fairness in maintaining this action as a class action in an adversary proceeding: Whether the matter were pursued as an adversary proceeding or a contested matter, the necessary basic procedural steps which would have to be taken are more or less the same. In either case, there would be a claim; discovery on the claim; a class certification motion; and a trial. Unlike a proof of claim -- the requirements for which are even more stripped down than those governing complaints[7] -- the complaint lays out in detail the elements of the claim, in addition to stating the statutory bases for the relief sought. The adversary proceeding vehicle has distinct case-management advantages -- coming from well-defined rules (national and local) regarding "meet and confer" and pre-trial procedures, to name but two. Unlike the situation in a contested matter, the Court need not blaze new trails in an Adversary Proceeding to lay out the course of the litigation. Furthermore, prosecution of the Class Claims in an adversary proceeding context presents a higher probability that the claims will be resolved sooner rather than later, which also works well with the notion that an earlier resolution of the claims will enable Debtor/Defendant and creditors herein sooner to determine the extent of the Class Claim for which the estate might be liable. [Motion, p.16:16-18]

---

[7]     In this regard, compare the minimal informational requirements of Official Form 10 (Proof of Claim) with FRCP 8.

The alternative would be to have the Class Claims deemed allowed, but then languish until Debtor decides to pursue an objection. From a fairness standpoint, the faster resolution of the claims through the adversary proceeding vehicle could mean the shortening of economic hardship to be suffered by the terminated employees who are the putative class members.

Finally, although the Motion makes much of the (false) charge that by pursuing the Class Claims through the adversary proceeding, rather than as a contested matter, the putative class is attempting to circumvent the Court 's discretion in the implementation of the Rule 23 procedures, the fact is that the Rules provide no guidance regarding the manner by which the Court's discretion is to be invoked. [See, *e.g.*, Rule 9014]. Therefore, as a practical matter, even in a contested matter setting, a motion for class certification would be necessary **in any event to** show the Court why it should exercise such discretion in favor of implementing class action procedures. The argument that Plaintiffs, through their initiation of this adversary proceeding, are attempting to circumvent the Court's discretion raises, in actuality, a non-issue.

### D.    The Class Claims Are Timely.

The Motion complains about the three-month delay between the Claims Bar Date and the filing of the Adversary Proceeding, as if this timing defeated the purpose of the Claims Bar Date Order and somehow caused prejudice to the plan confirmation process.[8]   This complaint is not well-taken for a number of reasons:

As a preliminary matter, in *Birting Fisheries*, 92 F.3d 939 at 941, the Ninth Circuit adopted *in toto* the reasoning of three circuit court decisions: *Reid v. White Motor Corp.,* 886 F.2d 1462 (6th Cir.1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct.

---

[8]    [Motion, p.16;16-23]

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**

1809, 108 L.Ed.2d 939 (1990); *In re Charter Co.,* 876 F.2d 866 (11th Cir.1989) and *In the Matter of American Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988). Those decisions establish that failure of a putative class member to file an individual claim does not preclude his or her inclusion in a later-certified class. Furthermore, they establish that no putative class member need file an individual claim in order for class certification to follow.

The Motion, begrudgingly recognizing the Ninth Circuit's *Birting Fisheries*[9], nonetheless goes on to urge that the reasoning behind bar dates in general should lead to dismissal of the Adversary Proceeding and of the proposed class action. [Motion, p.16:16-22] As stated by Defendant, these reasons are "in order for Defendant and other parties in interest to determine the total amount, number and types of claims that are asserted against the estate" and to "develop a viable plan of reorganization" Id.

In this case, those reasons do not begin to tip the balance: As shown above, the Plan **already contemplates and specifically describes the Class Claims**. Furthermore, in relation to the total scheduled liabilities (approximately $819,131,179), the estimated dollar amount of the Class Claims represents less than one-half of one percent (0.04%) of the total claims dollar amount and slightly over one-half of one percent (0.057%) of the total asset value of approximately $697,550,849. The Class Claims are **minuscule** in magnitude in the overall economics of this case. [See Debtor/Defendant's Summary of Schedules, RJN, Exhibit "D".]

---

[9] Indeed, the Motion leans heavily (calling them "leading cases") on decisions which are directly at odds with *Birting Fisheries*, in their failure to accept the validity of class claims. [See, Motion, p.13, note 9.]

16

Thus, with (1) a gap of just **three-months** between the Bar Date and the filing of the Adversary Proceeding; (2) total claims against Debtor/Defendant approaching $820 million against assets of approximately $697 million, with a possible bite from the Class Claims hovering at around one-half of one percent against each; and (3)  and coverage of the Class Claims in the Plan, Defendant's  complaints  appear  overblown.

As if that is not enough, Plaintiffs respectfully submit that, in addition to the foregoing, there are sufficient grounds for relief from the Bar Date Order under Rule 9006(b)(2). [Barness Declaration]

The Motion also argues that the Bar Date Order operates on the Class Claims, notwithstanding their status as, respectively, administrative (§ 503(b)(1)(A)(ii))) and priority (§ 507(a)(4)) claims [Motion, pp.17-18].  Again, the Motion is mistaken, as the following discussion shows:

## 1. <u>Administrative Claims</u>

No cases support Defendant's position that the administrative expense claims asserted by Plaintiffs are barred by the Bar Date Order.  Moreover, as demonstrated below, statutory authority, which overrides Rules of Procedure to the extent of any conflict, supports Plaintiffs' position.

Before embarking on an examination of applicable statutes and cases, it should be noted that Defendant cites **no authority** establishing that  claims, such as those here, arising under section 503(b)(1)(A)(ii) are subject to a general claims bar date order. The reason for that failing is simple -- there appears to be no such authority.[10]

The cases Defendant **does** cite do not support its contention that:  "The fact that the Bankruptcy Code now affords administrative classification and treatment to a

---

[10]    Although Plaintiffs found no such authority, more telling perhaps is Defendant's failure to cite any.

limited subset of prepetition claims (certain prepetition wages and benefits along with certain claims for goods delivered within 20 days of the commandment of a bankruptcy case) does not relieve a claimant of its obligation to file a claim prior to the expiration of the claims bar date [*i.e.,* the Bar Date as defined in the Motion]." [Motion, pp. 17:24-.18:18]

*Aargus Polybag Co. v. Commonwealth Edison Co.*, 172 Bankr. 586, 589 (N.D. Ill. 1994) [cited at Motion, p.18:19] is of no help to Defendant, because, predating by more than a decade the enactment of section 503(b)(A)(ii), it does not concern itself with a claim arising under that section, nor even with a statutory administrative claim, like the ones involved here.  It is also factually distinguishable from this case, in that it concerned the failure of an administrative claimant (a utility company) to file an administrative claim by an **administrative bar date**.  172 Bankr. 588.     It did **not** involve, as here, a bar date order covering **general unsecured claims**.

*In re Dana Corp.*, 2007 Bankr. Lexis 1934 (Bankr. S.D.N.Y. 2007) (cited in the Motion at p.18:25) does **not**, as Defendant would have the Court believe, hold that statutory administrative claims are *per se* subject to general bar date orders.  *Dana Corp.*  was *sui generis*, in that it involved hundreds of separate reclamation claims.

Furthermore, and more important, in that case, the bar date specifically referenced reclamation claims under section 503(b)(9).   In this case, in contrast, the Bar Date Order makes no mention of claims under section 503(a)(1)(A)(ii), which is applicable to both the WARN Act Claims and the Wage Continuation Claims.  [See RJN Exhibit "A".]  Accordingly, *Dana Corp.* provides no guidance regarding the proper treatment of Plaintiffs' administrative claims in this case.[11]

---

[11]     Plaintiffs also question the central premise of *Dana Corp.* that an order (the bar date order regarding pre-petition claims in that case) implementing a rule of procedure (F.R.Bankr. Proc. 3003(c)(2)) may

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**

Finally, to the extent *Dana Corp.* has applicability beyond its facts, which Plaintiff submits, it does **not**, it should be remembered that it concerned itself with a reclamation claim, as to which the Code provides specific provisions beyond section 503(b)(9), such as those in section 546(c)(1), requiring a written demand for reclamation within as early as 20 days post-petition following receipt of the goods by the debtor, in order for the reclamation claim to be accorded section 503(b)(9) status. This is entirely different from a back-pay claim under section 503(b)(1)(A)(ii).

Unlike *Dana Corp.*, the Court in this case has **not yet issued** an order setting a bar date for administrative claims -- statutory or otherwise.

Moreover, section 503(a) provides: An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the Court for cause. In the present case, the Plan states that the Court will set a bar date for payment of administrative expense claims. As no such bar date has been set, Plaintiffs respectfully submit that their claims are timely under section 503(a).[12]

The Bar Date Order does not abrogate section 503(a). On the other hand, if the Administrative Claims of the putative class are barred by the Bar Date Order, so too must all other administrative claims be so barred, because section 503(a) nowhere makes a distinction in treatment between post-petition and pre-petition administrative expense claims.

Debtor engages in flawed analysis in arguing that statutorily-created

override conflicting provisions of the Code (in that case, as this -- sections 503(a); 502(a) and 501.) That premise is contrary to the Ninth Circuit position. For more on this question, see discussion *infra*.

[12] The filing of the Complaint, and the maintenance of this Adversary Proceeding should suffice to constitute an informal proof of claim.

19

administrative expenses, such as the Class Claims somehow fall outside of the "actual and necessary costs of preserving the estate" category. This is contrary to the plain language of the statute, and its common-sense interpretation. After all, subsection (b)(1)(A)(ii) (the "Back-Pay Provision") is part of section 503(b), which encompasses the Back-Pay Provision, and twice uses the word "including". It reads:

> After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title [11 U.SC. § 502(f)], **including**--
>
> (1) (A) the actual, necessary costs and expenses of preserving the estate **including**--
>
> (ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title[.]

Yet, Defendant's reading of subsection (ii), and specifically its attempt to read it out of "actual and necessary" would set the Back-Pay Provision apart, as if the twice-stated word "including", should be read to mean "excluding".

It is also noteworthy that Defendant takes self-contradictory positions regarding the foregoing aspects of the administrative claims asserted by Plaintiffs: On the one hand, it says that the Class Claims should have been asserted as proofs of pre-petition claim (covered, it contends by the Bar Date Order) [Motion, p.17:14-23]. On the other hand, however, it states "Section 503(a) is the only means authorized by the Bankruptcy Code to assert an administrative claim. Such requests are limited to filing an administrative proof of claim or a motion requesting payment of the administrative proof of claim." [Motion, p.11:13-16]

As no administrative claims bar date has yet been set [Disclosure Statement, p.30, n6 (RJN, Exhibit "C"], let alone passed, Plaintiffs' Claims arising under section 503(b)(1)(A)(ii) are not time-barred.

The Debtor's Plan and Disclosure Statement provisions regarding classification and payment of administrative expenses are entirely consistent with Plaintiffs' analysis: In this regard, the Disclosure Statement states:

a.    <u>Administrative Claims</u>

Administrative Claims are claims for administrative costs or expenses **that are allowable** under Bankruptcy Code section 503(b) . . . **which** costs or expenses **may include**: (a) actual, necessary costs and expenses of preserving the Debtor's Estate after the Petition Date.

[Disclosure Statement, RJN, Exhibit "C", p.39:22-27. Emphasis added.]

It is also significant that even though the Debtor's definition of "Administrative Claims" under section 503(b) is inconsistent with that found in the Code (because of Debtor's addition of the words "after the Petition Date", which are **not found in the Code as part of section 503**), by its use of the words "may include", it nevertheless still encompasses statutory administrative claims, such as the Class Claims. [<u>See</u>, also, Plan, p.1:5-9, which also includes the non-statutory phrase "after the Petition Date".]$^{13}$

Last, pursuant to 28 U.S.C. § 2075, the Rules of Bankruptcy Procedure are not to "abridge, enlarge, or modify any substantive right." Thus, it has been held by circuit court authority, including that of the Ninth Circuit (discussed *infra*), that statutory provisions (*e.g.,* section 503(a)) cannot be abrogated by contrary provisions of the Federal Rules of Bankruptcy Procedure, such as Rule 3003(c)(2).

**2.  <u>Priority Claims</u>**

---

[13]    In making its arguments about "administrative claims", Debtor's Motion uses the Code definition, **not** the one quoted above which is found in the Disclosure Statement and Plan. [<u>See</u>, e.g., Motion, p.18:3-6.]

With respect to priority claims, a leading commentator has observed:
"Code § 507 appears to encompass all priority claims **whenever filed** [citations omitted] and Code § 726(a) imposes no threshold requirement for a priority claim to be eligible for payment . . .   Based upon the distribution scheme of Code § 726(a), it appears that **the Code does not contemplate the disallowance of priority claims for tardiness**. Code § 726(a)(2) allows late-filed claims when the claimant did not receive notice. No such exception is provided for priority claims, thus creating the impression that such claims should be allowed.[14]  <u>Norton Bankruptcy Law and Practice</u> 2d, 41:4.

Notwithstanding the bar date for filing claims established in Rule 3002, courts have concluded that timeliness is not necessarily a grounds for disallowance under the Code. For example, in regard to priority claims, Code § 507 appears to encompass all priority claims whenever filed.  *In re Vecchio*, 20 F.3d 555 (2d Cir. 1994), and Code § 726(a) imposes no threshold requirement for a priority claim to be eligible for payment.  Based upon the distribution scheme of Code § 726(a) it does appear that the Code does not contemplate the disallowance of priority claims for tardiness.

Title 28 U.S.C. § 2075, which implements the Bankruptcy Rules, provides that "[s]uch rules shall not abridge, enlarge or modify any substantive right."   As a result, any conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code.  *Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462, 1465

---

[14]      *In re Pacific Atlantic Trading Co.*, 33 F.3d 1064, 25 (9th Cir. 1994) (IRS's priority tax claim cannot be lost even though its proof of claim was not timely filed); *In re Vecchio*, 20 F.3d 555, (2d Cir. 1994). Accord *In re Davis*, 81 F.3d 134, 77 (11th Cir. 1996); *In re Bulldog Trucking, Inc.*, 226 Bankr. 174 (W.D. N.C. 1997), subsequently aff'd, 167 F.3d 857 (4th Cir. 1999).

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**

(9th Cir.1993).   According to this reasoning,  if the Class Claims are "allowed" according to the Code, Rule 3002(c) cannot be invoked to "disallow" them on "untimeliness" grounds.

As is true of the Class administrative expense claim, the Motion's discussion regarding the bar date, misses the mark with respect to the Class' priority claims.

If, on the other hand, the Court believes that the foregoing authorities are not binding and/or persuasive, Plaintiffs respectfully request that the Court defer the issue to enable them to bring a motion under Rule 9006(b)(2).

### E.    The Request for Attorney's Fees And Costs Are Appropriately Pled in the Complaint.

In the closing pages of the Motion, Defendant argues that Plaintiffs' request for attorneys' fees should be stricken, stating: "There is no provision of § 503(b)(1)(A)(ii) **or any other provision of the Bankruptcy Code** which authorizes the recovery of attorney's fees and costs as an administrative expense claim against debtor."

First, Defendant's statement is patently incorrect:  Section 503(a)(3)(D) contains a provision under which a committee representing creditors - other than a committee appointed under section 1102  of this title --- may be awarded attorneys' fees.   Of course, pursuant to section 506(b) a fully or over-secured creditor is also entitled to recover its attorney's fees.

Furthermore, requests for attorneys' fees for an unsecured creditor at levels above the "general unsecured claim" level  are not *per se* improper -- subject to being stricken from a complaint --- as Defendant would have the Court believe.                    To the contrary, courts have held that attorneys' fees incurred in connection with a specific-level priority claim are entitled to the same level of priority.  Thus, in *Certified Air Technologies, Inc.*, 300 Bankr. 355 (Bankr. C.D. Cal. 2003), attorney's fees were

granted in connection with a motion to compel administrative expenses, and were also accorded administrative expense status. *Id.* at note 9. [See, also, *In re World Sales, Inc.*, 183 Bankr. 872, 878 (9th Cir.BAP1995) (attorney's fees arising from breach of unrejected pre-petition collective bargaining agreement accorded administrative expense priority.]

Likewise, in *In re Jamesway Corp.,* 242 Bankr. 130, 132-134 (Bankr. S.D.N.Y. 1999)[15], where WARN damages were awarded as an administrative expense, attorney's fees associated with that recovery were also given the same treatment.

The two cases cited by Defendant do not dictate a contrary result, and they can be easily distinguished from the present case. In each of these cases, the underlying claim was determined to be a general unsecured claim, so that attorney's fees associated therewith were also accorded general unsecured" treatment. Unlike this case, neither of Defendant's cited cases involved a fee-shifting statute such as the WARN Act or Labor Code section 218.5, and, also unlike this case, neither case involved an underlying claim falling under either section 503(b) or section 507(a).

In the case *Christian Life Ctr. Litig. Defense Comm. v. Silva (In re Christian Life Center),* 821 F.2d 525, 533 (9th Cir. 1987), [cited in the Motion at p.19:20],the Ninth Circuit refused to grant administrative expense status to legal fees incurred post-petition because they were

---

[15] In a separate opinion in the same case, the court pointed out that "Section 2104(a)(6) has been interpreted as a fee shifting statute, and provides prevailing plaintiffs in WARN Act suits with reasonable attorneys' fees unless such an award would be unjust." *In re Jamesway Corp.*, 235 Bankr. 329, 348 (Bankr. U.S.D.N.Y. 1999) .

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**

incurred in defending litigation that resulted from prepetition obligations. The Ninth Circuit later elaborated on its holding in that case by stating that "[a]lthough the legal fees expended in defending a corporate officer in In re Christian Life were actually incurred post-petition, we held that the claim arose pre-petition because the corporation's obligation to indemnify the officer arose from pre-petition services, i.e., it was a form of compensation." *Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525, 533 (9th Cir. 1998) (citations omitted). "In reaching that conclusion, we emphasized that it makes no difference that the duty to indemnify [the officer] for litigation expenses . . . did not accrue until after the petition was filed when [the officer] incurred those expenses; the critical fact is that the claim for indemnity arose from pre-petition services [the officer] provided the corporation." *Id*. at 533.

Similarly, in *Abercrombie v. Hayden Corp. (In re Abercrombie)*, 139 F.3d 755 (9th Cir. 1998), which held that the attorneys' fees there at issue were not entitled to administrative priority despite their incurrence post-petition. There, the obligation arose from a real estate contract action which had been initiated prepetition, and, of course, no statutory right to a higher-level priority claim was implicated. While Defendant argues that here too the "services" were rendered pre-petition, it ignores the fact that like the attorneys fees found in *In re World Sales, Inc.* 183 Bankr. at 879 to be entitled to administrative expense status because they were associated with an unrejected collective bargaining agreement, the treatment of which congress elevated through enactment of section 1113(f), so too here, the treatment of the Class Claims under sections 507(a)(4) and 503(b)(1)(A)(ii) elevates the associated attorneys' fees to the same levels. [16]

_____

[16] It can also be argued that, in fact the Class Claims were still accruing after the Petition Date: Under both the WARN Act and LC § 203, wages continued for sixty days and thirty days, respectively, which periods

# IV. CONCLUSION

As demonstrated, the Complaint satisfies the requirements of FRCP Rule 8, and is not subject to dismissal for failure to state a claim.

This Opposition has also shown a long history of the cases supporting certification of classes in WARN Act cases. It has also shown that cases have held an action under the WARN Act be equitable in nature, satisfying the "equitable relief" criterion of Rule 7001(7), the consequence of which is that the Class Claims may be prosecuted in the context of this Adversary Proceeding, sheet and that Adversary Proceeding should not be dismissed for the reason that it should have been initiated as a contested matter.

Plaintiffs have also shown that the Class Claims are not barred by the Bar Date Order or by operation of the Bar Date Notice, in part because of the administrative and priority nature such claims.                                    The Motion has failed to show why the Complaint's request for attorneys fees and costs should be stricken, having failed to bring forth any authority to support that contention. Applicable authority is to the opposite effect.

Finally, if the Court believes there are grounds to grant the Motion, Plaintiffs respectfully request that the Court permit Plaintiffs to amend the Complaint as necessary and/or to seek relief from the Bar Date Order under Rule 9006(b)(2).

Foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion in all respects, or, alternatively, that it issue an order affording Plaintiffs leave and time to amend the Complaint as appropriate and/or to seek relief under Rule 9006(b)(2).

---

both terminated post-petition.

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**

Dated: November 15, 2007                    Spiro Moss Barness LLP

                                            /s/ DANIEL I. BARNESS

                                            _____
                                            Daniel I. Barness
                                            Attorneys for Plaintiffs Amy Eberly, Erin
                                            Goodman  and Jamie Kirk  individually
                                            and on behalf of all others similarly
                                            situated

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**

# DECLARATION OF DANIEL I. BARNESS

I, Daniel I. Barness, declare:

I am an attorney at law duly licensed to 's before all courts of the state of California before this Court. Partner in the law firm of Spiro Moss Barness LLP, attorneys for Plaintiffs herein. The fact stated herein are known personally to me to be true, and if called upon to testify as to the truth of such facts, I could and would so testify. I hold a certification from the American Board of Certification in the area of business reorganization. I have practiced almost exclusively in the area of bankruptcy for almost 25 years. Over the past five years, I have handled several matters involving class claims on behalf of former employees of Chapter 11 debtors.

1. In the course of my involvement in this matter, as well as other matters involving subprime lenders and mass layoffs, I have discussed with a number of putative class members the financial hardships occasioned by their sudden termination. A number of former employees have told me about financial disaster which befell them and their families when they suddenly found themselves unemployed, not only with their last wages unpaid, but with virtually no notice that the termination was coming. In this regard, I received letters from a number of former Ownit employess. Below are excerpts from some of the correspondence I received.

2. One former Ownit employee wrote:

"I was only given one day notice by my bosses at Own-It Mortgage and was promised my last paycheck but was never given one. This threw me into a huge financial distress as it was the holiday season and I had no money saved for bills

and rent, etc. so I had to borrow money from relatives to get through the month. Needless to say I could not give my son much of a Christmas that year.

I had to stop everything and go out and look for a job immediately which was also a process and cost me gas money.

If I had been paid my last paycheck and PTO time, I would have been okay until I got another job but it was a very difficult time for me because I wasn't paid what I should have been."

3.  Another former Ownit employee wrote:

"Due to the unexpected layoff, I entered a financial hardship. I was not financially prepared for the layoff, and I was living from check to check. Since I never received my last paycheck, I was on the verge of eviction and my bills were overdue. I had to borrower money from family and friends to buy food for my house. During that time, my son's birthday was on December 16 and Christmas was right around the corner. I had to make the terrible decision whether to pay what bills I could, or spend the money on gifts for my son. It was hard for me to find another job due to the Christmas season, so I was out of work for three months. I am now beginning to pay off the debt I collected, but it has been extremely hard for my family and me."

4.  A third former Ownit employee wrote:
"All of us had no time to find a job, the notice was to drastic and soon. If I had known about the [coming termination] my life would be easier then it is today.

Today I have no place to go, no job since mortgage market collapsed and will face car repossession. I had also talked other employees and they stating that the sudden layoff put them into hardship. Example: I had place a call to one of my great co-workers from Sacramento Branch [name deleted], the underwriter. I had told her that "we" are going out of business she paused and was in disbelief . . .she said that she just purchased a house thru OWNIT. "

5.    I learned through discussions with several former Ownit employees that prior to the mass layoff, Ownit had employed at least 150 employees at each of two separate facilities. According to my understanding of the Warn Act, each of these facilities would be a "covered facility" for purposes of the WARN Act.

6.    Based on the circumstances of this case, I believe there are sufficient grounds for a finding of "excusable neglect" under Rule 9006(b)(2) to warrant relief from the Bar Date Order. If necessary, and if granted leave to do so, I would bring a Rule 9006(b)(2) motion with respect to the Class Claims. I believe there are sufficient circumstances and grounds for relief from the Bar Date Order.

I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct, and that this Declaration was executed this November 15, 2007 at Los Angeles, California.

Daniel I. Barness

**PLAINTIFFS' OPPOSITION TO "MOTION TO DISMISS UNDER FRCP 12(b)(6);
MOTION TO STRIKE REQUEST FOR ATTORNEY'S FEES AND COSTS"**