Daniel I. Barness
  SBN 104203, daniel@spiromoss.com
**SPIRO MOSS BARNESS LLP**
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064
Telephone:  (310) 235-2468
Facsimile:   (310) 235-2456

Attorneys for Plaintiffs Amy Eberly, Erin Goodman, and Jamie Kirk, individually and on behalf of all others similarly situated

# UNITED  STATES BANKRUPTCY COURT

## CENTRAL  DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | CASE NO.  06-12579 KT |
| OWNIT MORTGAGE SOLUTIONS, INC., | Chapter 11 |
| | ADV.  NO.  07-01212 KT [CLASS ACTION] |
| Debtor. | |
| _____ | MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF AMY EBERLY, ERIN GOODWIN AND JAMIE KIRK AND DANIEL IL. I. BARNESS IN SUPPORT THEREOF |
| AMY EBERLY, ERIN GOODMAN AND JAMIE KIRK, individually and on behalf of all others similarly situated, | |
| Plaintiffs | |
| v. | Date:        May 13, 2008 |
| | Time:       10:00 a.m. |
| OWNIT MORTGAGE SOLUTIONS, INC., | Place:       Courtroom 301 |
| Defendant. | |
| _____ | |

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

# **TABLE OF CONTENTS**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.    STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

       A.    Background Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

       B.    Prior and Pending  Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

III.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
       A.    WARN Claims Are Widely Recognized by the Courts
             to Be Especially Appropriate for Class Certification. . . . . . . . . . . . . .  9

       B.    LC 203 Claims Have Been Recognized in This Circuit as
             Allowable  in Bankruptcy Proceedings  . . . . . . . . . . . . . . . . . . . . . .  11

       C.    The Proposed Class and Subclass  Satisfy the
             Requirements of Rule 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

             1.    The Proposed Class and Sub-Class Meet the Requirements
                   of Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

                   (a)    The Numerosity Requirement is Satisfied . . . . . . . . . . .  12

                   (b)    Questions of Law and Fact Are Common to All
                          Members of the Proposed Class . . . . . . . . . . . . . . . . . . .  13

                   (c)    The Claim of the Representative Party is
                          Typical of the Claims of the Class . . . . . . . . . . . . . . . . .  14

                   (d)    The Plaintiffs Will Fairly and Adequately
                          Protect the Interests of the Class  . . . . . . . . . . . . . . . . .  15

             2.    The Proposed Class and Sub-Class Meet the Requirements
                   of Rule 23(B)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

       D.    Class Claims Are Proper in Bankruptcy Court Even When the
             Putative Class Members Did Not File Individual Claims. . . . . . . . . .  18

       E.    Appointment of Class Representatives . . . . . . . . . . . . . . . . . . . . . .  19

       F.    Appointment of Class Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

       G.    The Form and Manner of Service of Notice . . . . . . . . . . . . . . . . . . .  20

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

# <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

Ace Heating & Plumbing Co. v. Crane Co.
 453 F.2d 30 (3rd Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Amchem Prods v. Windsor
 521 U.S. 591, 625 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

APA Transport
 2005 WL 3077916 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Birting Fisheries, Inc. v. Lane
 92 F.3d 939, 940 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 25

Bledsoe v. Emery Worldwide Airlines
 257 F. Supp. 2d 780 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Brady v. Thurston Motor Lines
 726 F. 2d 136 (4th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Califano v. Yamasaki
 442 U.S. 682, 700-701 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cashman v. Dolce International/Hatford, Inc.
 225 F.R.D. 73 (D. Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Ciarlante v. Brown & Williamson Tobacco Corp.
 1995 WL 76479*1, 11 IER Cases 513 (E.D. Pa. Dec 18, 1995) . . . . . . . . . . 17

Coggins v. Sears, Roebuck and Company
 155 Bankr. 934, 937 (E.D.N.C. 1993) . . . . . . . . . . . . . . . . . . . . . . . 19

Cruz v. Robert Abbey, Inc.
 778 F. Supp. 605 (E.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cypress v. Newport News General & Nonsectarian Hospital Ass'n
 375 F.2d 648, 653 (4th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . 19

Dura-Bilt Corp. v. Chase Manhattan Corp.
 89 F.R.D. 87, 99 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Eisen v. Carlisle & Jacquelin
 391 F.2d 555, 562 (2d Cir. 1968), cert. denied, 417 U.S. 156 (1974) . . . 22, 24

Eisen v. Carlisle & Jacquelin
 417 U.S. 156, 177 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

NOTICE AND MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF

Finnan v. L.F. Rothschild & Co.
    726 F. Supp. 460, 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

General Tel. Co. v. Falcon
    457 U.S. 147, 155 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Grimmer v. Lord, Day & Lord
    937 F. Supp. 225 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

Grunin v. International House of Pancakes
    513 F.2d 114, 122 (8th Cir.), cert. denied, 423 U.S. 864, 96 S. Ct. 124 (1975) 21

In re Charter Co.
    876 F.2d 866 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

In re First Alliance Mortgage Corp.
    269 Bankr. 428, 444 (D. C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Metro Fulfillment v. Gottlieb
    294 Bankr. 306 (9th Cir. BAP 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Jones v. Kayser-Roth Hosiery
    748 F. Supp. 1276 (E.D. TN. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Pearson v. Component Technology Corp.
    247 F.3d 471 (3rd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.
    323 F.Supp. 364, 378 (E.D. Pa. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Phillips Petroleum Co. v. Shutts
    472 U.S. 797, 809 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Reid v. White Motor Corp.
    866 F.2d 1462, 1469 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Reyes v. Greater Texas Finishing Corp.
    19 F. Supp. 2d 709 (W.D. Texas 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rodger v. Electronic Data Systems Corp.
    160 F.R.D. 532 (E.D.N.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Steiner v. EquimarkCorp.
    96 F.R.D. 603, 614 (W.D. Pa. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Trist v First Federal Saving & Loan Association
    89 F.R.D. 1, 2 (E.D. Pa. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Weinberger v. Kendrick
    698 F.2d 61, 71 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Whit v. National Football League
    41 F.3d 402, 408 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**FEDERAL STATUTES**

Worker Adjustment and Retraining Notification Act . . . . . . . . . . . . . . . . . . 3, 5, 11, 13

**STATE STATUTES**

California Labor Code section 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
California Labor Code section 201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
California Labor Code Section 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12
California Labor Code §§ 1400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**FEDERAL RULES**

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18
Fed. R. Civ. P. 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Fed. R. Civ. P. 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Fed. R. Civ. P. 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Fed. R. Civ. P. 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Fed. R. Civ. P. 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Fed. R. Civ. P. 23(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Federal Rule of Bankruptcy Procedure 7023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE AND MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF

# I. INTRODUCTION

By this Motion, Amy Eberly, Erin Goodman and Jamie Kirk ("Plaintiffs") seek an order (a) certifying a class pursuant to the Federal Rule of Bankruptcy Procedure 7023, comprised of former employees of Defendant Ownit Mortgage Solutions, Inc. who were terminated without cause from their employment and were not paid final wages as defined in California Labor Code §227 and a subclass of such former employees who were laid off from the below-defined WARN Act Facilities (the "Facilities) on or about December 5, 2006, or thereafter as part of, or as the reasonably expected consequence of, the mass layoff or plant closing, as defined by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101 et seq. (the "WARN Act"), at the Defendants' Facility, who do not file a timely request to opt-out of the class, (b) appointing Spiro Moss Barness LLC as Class Counsel, (c) appointing Plaintiffs as the class representatives, (d) approving the form and manner of notice to the class of this action, and (e) granting such other and further relief as this Court may deem proper.

# II. STATEMENT OF FACTS

The following facts are established in part by the matters of which the Court is asked to take judicial notice [see concurrently-filed Request for Judicial Notice]; by the annexed Declarations of Amy Eberly, Erin Goodman and Jamie Kirk and of Daniel I. Barness:

**A.     Background Facts**

1.     Prior to the commencement of these Chapter 11 proceedings on December 28, 2008 (the "Petition Date"), Debtor/Defendant, previously known as Oakmont Mortgage Company, was a mortgage lender specializing in "subprime / non-prime" loans to customers with weak or no credit histories for the primary

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

purpose of purchasing residential real estate.[1]

2. On December 5, 2006, prior to the Petition Date, Debtor/Defendant, with as little as two hours' notice, announced to its employees that their employment was terminated effective immediately, and that they should clean out their desks and leave. In the case of the most, if not all, of Debtor's employees, the termination was effected suddenly, and without payment of final wages. [Eberly, Goodman and Kirk Declarations (hereinafter "Plaintiffs' Declarations"), ¶¶ 3, 5, 7, 8]

3. At the time of the terminations described above, Debtor/Defendant, at each of the Facilities, had employed not fewer than 100 full-time employees for not less than six months.  [Plaintiffs' Declarations, ¶ 2]

4. Debtor/Defendant's employees were owed wages, paid time off and other benefits at the time of such termination, but it failed to pay them immediately. Indeed, it failed to pay such terminated employees their final wages, PTO and other benefits for a period of more than a year following the terminations. [Plaintiffs Declarations, ¶¶ 4-5, 8. [See also, Debtor's Schedule E, an excerpt of which is attached as RJN Ex. "A". ]

**B.    Prior and Pending  Proceedings**

5. This Chapter 11 case was commenced by the filing of a voluntary petition on December 28, 2006.

6. Pursuant to an order of this Court,  June 15, 2007 was set as the  date for filing pre-petition proofs of claim (the "Bar Date").

7. An Adversary Proceeding entitled *Eberly et al. v. Ownit Mortgage Solutions, Inc.*, Adv. No. 07-01212 KT (the "Adversary Proceeding") was commenced on September 12, 2007.  The Complaint therein, styled as a class action, states

---

[1]    See, e.g., Debtor/Defendant's Third Amended. Disclosure Statement.

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

claims for (1) Damages for Failure to Timely Pay Wages; (2) Damages Pursuant to the WARN Act; and (3) Declaratory Relief that certain components of such claims are entitled to administrative expense treatment pursuant to section 503(b)(1)(A)(ii). The Adversary Proceeding seeks declaratory relief and damages for Debtor's failure to give any written notice to its affected employees of the mass termination of their employment and its failure to immediately pay them their final wages. The claims arise from Debtor's violation of the notice provisions of the Worker Adjustment and Retraining Notification Act [29 U.S.C. §§ 2101, et seq. and California Labor Code §§ 1400 et seq.] (collectively, the "WARN Act"), which require that, prior to effecting a mass layoff or plant closing, an employer must give not fewer than sixty days' written notice to the affected employees and to certain governmental agencies. The purpose of the 60-day WARN notice requirement is to lessen the financial trauma resulting from a sudden termination of employment. The damages provisions are aimed at compensating the injured employee for his or her employer's failure to give the required notice. The action also seeks remedies arising from Debtor's failure immediately to pay outstanding wages due upon termination of its employees. The Complaint alleges the basis for a class and subclass as to these claims: The Class consists of all persons whose employment was terminated with payment of final wages, and who therefore qualify for wage continuation under LC 203, and the Sub-Class consists of those employees who were **also** employed at a WARN Act "facility" at that time, and who are entitled to WARN damages[2]. [RJN, Ex "B", ¶¶ 11-12]

---

[2]  The federal WARN Act requires that an employer's "facility" employed a threshold number of 100 regularly employed employees for a period of not less than six months [29 U.S.C. §§ 2101(a)(1), 2102(a)(2)], whereas the California WARN Act requires 75 over a 12-month period [LC §

4

8. On January 17, 2008, the Court issued an order (the "Confirmation Order") confirming "Debtor's Third Amended Liquidating Plan of Reorganization Under Chapter 11 of the Bankruptcy Code" (the "Plan"). Pursuant to the Plan, which was effective on January 28, 2008, the assets of Debtor's estate vested in the Ownit Liquidating Trust (the "Liquidating Trust"). [RJN, Ex "C"]

9. On or about December 1, 2007, in connection with its showing of feasibility with respect to the Plan, Debtor filed a motion (the "Reserve Motion"), seeking authorization to establish a reserve account in part to the cover the "WARN-related Claims" of Plaintiffs and the putative Class, consisting of claims under the WARN Act and under LC 203. [Barness Declaration, ¶ 4] According to **Debtor's** calculation set forth in its Reserve Motion Reply, a true and correct copy of which is attached to the RJN as Exhibit "D", there is a total potential liability of $1,537,047.32 on account of the WARN claims, of which $978,121.02 is attributable to the post-petition period, and $558, 926.30 is attributable to the pre-petition period (*i.e.,* priority claims under section 507(b)(4)[3]. [See Reserve Motion Reply, RJN, Ex "D" 5:10-19] Also according to Debtor's figures, $940,153.67 (or 43% of the total calculated by Debtor as its potential liability) is attributable to claims under LC 203. [RJN, Ex "D", p.6:1-11-p.7:2-13]. Of the aggregate of the claims -- WARN Act

---

1402(a),(b)]. The two Facilities here each employed over 100 persons during the 6-month period prior to the mass layoff/plant closing. [See, Plaintiffs Declarations, ¶ 2.] A "mass-layoff" is defined as the concurrent termination of not fewer than 50 employees. [LC §1400 (a), (b) (c)]

[3] Plaintiffs do not agree with Debtor's figures, and reserved all rights in connection with a compromise reached regarding the Reserve Motion. [Barness Declaration, ¶ 4, n 1]

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

claims and LC 203 claims -- according to Debtor's figures, $1,135,824.99, or 46% of the total claim is attributable to pre-petition/section 507(b)(4) priority. [RJN Ex "D", p.6:1-11]

10.   Following a compromise of the parties, the Court approved the Reserve Motion, by incorporating it into the Confirmation Order.  A true and correct copy of the Confirmation Order is attached to the RJN as Exhibit "C" to the Request for Judicial Notice and incorporated herein by this reference.  [RJN, Ex "C"]

11.   On or about  November 6, 2007, Debtor filed a motion to dismiss the Adversary Proceeding (the "Dismissal Motion").  The Court's tentative ruling was to <u>deny</u> that motion.  At the conclusion of the initial hearing on the Dismissal Motion, held on November 29, 2007,  the Court took the matter under submission, stating that it would announce its final decision on or before  February 6, 2008. On February 6, 2008, the Court announced its decision to reverse its position which had been stated in the tentative ruling, and to *grant* the Dismissal Motion. Thereafter, the Court issued a Memorandum of Decision, reflecting the basis for its disposition of the Dismissal Motion.   The Memorandum of Decision recites: "This motion to dismiss by defendant Ownit Mortgage Solutions ("Debtor") initially came on for hearing on November 29, 2007.  The court heard argument at the initial hearing and **considered, on a tentative basis that the motion should be denied on the grounds that the claims bar date in this bankruptcy case did not apply to claims entitled to administrative status under 11 U.S.C. § 503(b)(1)(A)(ii).**"    [Emphasis added.]

12.   The Memorandum of Decision reflects the Court's conclusion that even though section 503(b)(1)(A)(ii) provides for administrative expense status as to those portions of the WARN Act claim and of the LC 203 claim that accrued after the Petition Date, such claims are nevertheless subject to the Bar Date Order.

13.   At the February 6, 2008 hearing on the Dismissal Motion, counsel for Plaintiffs requested that the effectiveness of the Dismissal Order be deferred to give

6

1   Plaintiffs an opportunity to bring a motion seeking relief from, or an extension
2   of, the Bar Date. The Court's Memorandum of Decision states that dismissal of
3   the Adversary Proceeding is effective March 12, 2008.[4]

14.   On February 15, 2008, Plaintiffs brought a motion entitled "Motion for Order
Extending the Claims  Bar Date Or, Alternatively, for Leave to File Late Claim"
(the "Late Claim Motion").  The Late Claim Motion - which sought  extension
of the Bar Date under Rule 3003 (c)(3); leave to file a "tardy claim" under
section 503(a) and/or relief from the Bar Date under Rule 9006 (b)  - arises out
of a ruling made in the context of the Adversary Proceeding, which was filed as
a class action.  [Barness Declaration, ¶ 8]  The Motion was brought after
Debtor/Defendant's motion seeking dismissal of the Adversary Proceeding was
granted. The Court granted the Dismissal Motion on the basis that employee
claims, including those under section 503(b)(1)(A)(ii),  had not been asserted
through the filing of proofs of claim prior to the Bar Date.  [Barness
Declaration, ¶ 8]

15.   On March 18, 2008, the Court vacated its order dismissing the Adversary
Proceeding, and held a hearing on March 25, 2008 with respect to that order.  At
the hearing, counsel for Plaintiffs requested that the Court <u>not</u> dismiss the
Adversary Proceeding, and mentioned the possibility of making a class
certification motion outside the context of the Adversary Proceeding, if
necessary.   [Barness Declaration, ¶ 9]

16.   On March 28, 2008, three days after the hearing with respect to the Proposed
Dismissal Order, counsel for Plaintiffs received from a putative class member a
letter and proposed stipulation (the "Release Stipulation") which he had
received from Pachulski, Stang, et al., now acting as "Special Counsel for the

---

[4]      As stated below, the effectiveness of that Order has been stayed.

7

Ownit Liquidating Trust"[5]. The Release Stipulation arises from an omnibus objection to duplicative claims or claims which are in excess of scheduled amounts and/or above statutory priority limits. The Release Stipulation purports to "settle" the "disputed" claim for the amount of the "Scheduled Claim." In other words, the amount of the "settlement" is simply the amount already scheduled by Debtor as undisputed and subject to distribution in full pursuant to the Confirmation Order. [Barness Declaration, ¶ 10]

17. In exchange for "allowance" of an amount already scheduled as "allowed", the Release Stipulation provides:

> "The Creditor hereby waives any claim that he may be able to assert under (i) Federal WARN; (ii) California WARN; (iii) California Labor Code; (iv) the WARN Action; or (v) any other Federal or State law regarding employee wages and benefits."

The Release Stipulation, if approved by the Court, would purport to effect a waiver of the claims in the Adversary Proceeding with no consideration other than payment of an "allowed claim" which the estate already has an unconditional obligation pay pursuant to the Plan and the Confirmation Order.

18. The Release Stipulation contains a recital regarding the WARN Action and the Late Claim Motion, reciting that the claims asserted therein are for a total of not less than $3.9 million, and there can be no doubt that it seeks to effect a waiver of the claims asserted in the Adversary Proceeding as to the purportedly

---

[5] A true and correct copy of the Release Stipulation is attached as Exhibit "D" to the Barness Declaration to the below-described Plaintiffs' Request for (1) Status Conference; (2) Scheduling Order and (3) Coordination of Hearings, which Plaintiffs will seek to have considered at the same time as the present Motion. [Barness Declaration]

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

1    releasing the creditor.  [Barness Declaration, ¶¶ 10-12]

2  19.  On April 3, 2008, the Court issued an Order (the "Late Claim Order")

3        [RJN, Ex "E"], granting, in part,  the Late Claim Motion.  In connection with

4        that Order, the Court issued a Memorandum of Decision (the "Late Claim

5        Memorandum of Decision" or the  "Memorandum of Decision")   [RJN Ex "F"]

6        The Late Claim Order extends the Bar Date to permit the assertion of WARN

7        claims entitled to administrative expense priority pursuant to section

8        503(b)(1)(A)(ii).[6]

9  20.  On April 4, 2008,  Plaintiffs filed a pleading entitled "Plaintiffs' Request for (1)

10        Status Conference; (2) Scheduling Order and (3) Coordination of Hearings"  in

11        part to bring to the Court's attention the solicitation of waivers by way of the

12        Release Stipulation and requesting the implementation of the procedural matters

13        described in the title of that pleading.  [Barness Declaration, ¶ 13]

14  21.  On April 13, 2008, Plaintiffs filed a Motion for Reconsideration of the Late

15        Claim Order.  That motion is scheduled to be heard at the same date and time as

16        the current motion.  [Barness Declaration, ¶ 13]

17                        **III.  DISCUSSION**

18  A.    **WARN Claims Are Widely Recognized by the Courts to Be**

19        **Especially Appropriate for Class Certification.**

20        Courts have regularly held that the WARN Act is "particularly amenable to

21  _____

22  [6]    The Late Claim Memorandum of Decision and Order  exclude from their
        scope pre-petition priority claims otherwise entitled to treatment under
23        section 507(b)(4) and make no mention of post-petition claims under
        California Labor Code Section 203, nor do they specifically refer to
24        section 503(a) as a basis for leave to file a "tardy" request for payment of
        an administrative expense, notwithstanding that the Late Claim Motion,
25        respectively, referred to such claims and asked for relief under section
        503(a), in addition to seeking relief under Rules 3003(c)(3) and 9004(6)
26        as to the WARN Claims.  For these reasons, Plaintiffs have filed a
        motion for reconsideration of the Late Claim Order, which is scheduled
27        to be heard a the same time as this Motion.  [Barness Declaration, ¶ 13]
28

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

class litigation." *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989); *See also Grimmer v. Lord, Day & Lord*, 937 F. Supp. 225 (S.D.N.Y. 1996) ("[T]he WARN Act provisions lend themselves to class action because they provide for limited recovery."); *New Orleans Clerks and Checkers Union Local 1497 v. Ryan-Walsh, Inc.*, 1994 U.S.Dist. LEXIS 2403 (E.D. La. 1994)("the instant proceeding, a WARN action, falls squarely within the criteria for sanctioning a class.").

Thus, violations of the WARN Act have given rise to numerous class action cases and class certification is routinely granted. <u>See</u>, *e.g.*, *Pearson v. Component Technology Corp.*, 247 F.3d 471 (3rd Cir. 2001) (former employees brought representative action on behalf of other employees against employer's secured creditor under the WARN Act); *Jones v. Kayser-Roth Hosiery*, 748 F. Supp. 1276 (E.D. TN. 1990) (former employees brought action under WARN Act on behalf of other employees); *Bledsoe v. Emery Worldwide Airlines*, 257 F. Supp. 2d 780 (S.D. Ohio 2003); <u>Cashman v. Dolce International/Hatford, Inc.</u>, 225 F.R.D. 73 (D. Conn. 2004); <u>Cruz v. Robert Abbey, Inc.</u>, 778 F. Supp. 605 (E.D.N.Y. 1991); <u>Reyes v. Greater Texas Finishing Corp.</u>, 19 F. Supp. 2d 709 (W.D. Texas 1998).

The merits of the action are <u>not</u> to be considered in weighing class certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action . . . 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'") <u>See</u> also *Ciarlante v. Brown & Williamson Tobacco Corp.*, 1995 WL 76479*1, 11 IER Cases 513 (E.D. Pa. Dec 18, 1995) (holding that because the issue of whether a location was a single site of employment affected the merits, it could not be considered on a motion for class certification; 3 <u>Newberg on Class Actions</u> (4th ed. 2002) § 7.9.

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

**B.** **LC 203 Claims Have Been Recognized in This Circuit as Allowable in Bankruptcy Proceedings**

California Labor Code section 201 (a) states, in relevant part: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

Labor Code section 203 provides: "If an employer willfully fails to pay, without abatement or reduction…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days."

The Ninth Circuit Bankruptcy Appellate Panel, in the case of *In re Metro Fulfillment v. Gottlieb*, 294 Bankr. 306 (9th Cir. BAP 2003), held that employees who are terminated post-petition and are not paid their wages are entitled to a LC 203 claim, which in the case of an administrative expense event, is entitled to administrative expense priority. The *Metro Fulfillment* case addressed a debtor's failure to timely pay its employees' wages.

**C.** **The Proposed Class and Subclass Satisfy the Requirements of Rule 23.**

The Class consists of all persons whose employment was terminated with payment of final wages, and who therefore qualify for wage continuation under LC 203, and the Sub-Class consists of those employees who were **also** employed at a WARN Act "facility" at that time, and who are entitled to WARN damages. [See Complaint, RJN, Ex "B", ¶¶ 11-12]

Class certification requires that each of the four prerequisites for class certification set forth in Federal Rule of Civil Procedure 23, namely Rule 23(a)(1), (2), (3) and (4), be satisfied and that, in addition, at least one of the subparts of Rule 23 (b) -- here 23 (b)(3) -- be satisfied. As shown below, the prerequisites for class

11

certification of the Class and WARN Sub-Class are clearly present in this action.

**1.** **The Proposed Class and Sub-Class Meet the Requirements of Rule 23(a)**

F.R. Civ. 23(a) provides as follows:

**Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly protect the interest of the class.

(a)     The Numerosity Requirement is Satisfied

Federal Rule of Civil Procedure 23(a)(1), requires that the class sought to be certified be "so numerous that joinder of all members is impracticable." This prerequisite, however, does not require that joinder be impossible. *Coggins v. Sears, Roebuck and Company,* 155 Bankr. 934, 937 (E.D.N.C. 1993); *see* also, 1 Newberg on Class Actions, § 3:4 at 230 (4th Ed. 2002) (It is important to remember that "[i]mpracticable does not mean impossible."). No specific number is needed to maintain a class action. *Cypress v. Newport News General & Nonsectarian Hospital Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967). Rather, an "application of the rule is to be considered in light of the particular circumstances of the case." *Cypress,* 375 F.2d at 653. Classes consisting of forty or more persons "should have a reasonable chance of success on the basis of number alone." 1 Newberg, supra § 3:5 at 248.

WARN Act class action litigation typically involves claims brought by the former employees of an employer who number less than the estimated 153 former employees which make up the proposed WARN Sub-class of former Ownit employees. *Brady v. Thurston Motor Lines,* 726 F. 2d 136 (4th Cir. 1984) (certifying

12

class of 74 persons); *Grimmer v. Lord, Day & Lord*. 937 F. Supp. 225 (S.D.N.Y. 1996) (certifying class of 92 persons).

In this case, it has been determined that there are not fewer than 327 persons in the Class and Sub-Class, consisting of 174 persons in the Class, and not fewer than 153 in the Sub-Class.[7] [Barness Declaration, ¶ 16] Thus, according to the foregoing authorities, the "numerosity" requirement is satisfied as to both the Class and the Sub-Class.

(b)     Questions of Law and Fact Are Common to All Members of the Proposed Class

The second prerequisite of class certification is that "there be questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]lass relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and they 'turn on questions of law applicable in the same manner to each member of the class.' For in such cases, 'the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982), quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)).

Here, as to both the Class and the Sub-Class, the Plaintiffs claim that they and the other Class Members were terminated as part of a common plan stemming from the Defendant's decision to discontinue business operations and close the Facility. Additionally, factual and legal questions stem from a common core of facts regarding the Defendant's actions and a common core of legal issues regarding every Class Member's rights, as follows:

(i) **The Class**: Defendant failed to pay wages of all class members immediately upon termination of their employment, as required by California Labor Code section 201(a), giving rise to liability under LC 203. Common legal and

---

[7]     Rule 23(c)(4) provides for sub-classes.

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

factual issues exist as to all Class members, because they were all terminated under similar circumstances, and all failed to receive their statutorily-defined wages immediately upon termination. [Plaintiffs' Declarations, ¶ 8]

(ii) **The WARN Sub-Class[8]:** (1) Defendant employed at the qualifying WARN Facilities more than 100 employees at all times for a period of not less than six months; (2) all the Sub-Class Members are protected by the WARN Act; (3) the Class Members were employees of the Defendant; (4) the Defendant discharged the Sub-Class Members on December 5, 2006, and thereafter in connection with a mass layoff or plant closing; (5) the Sub-Class Members were "affected employees," as they lost their employment without cause; (6) the Defendant terminated the employment of the Sub-Class Members without giving them at least 60 days' prior written notice as required by the WARN Act; and (7) the Defendant failed to pay the Sub-Class Members 60 days' wages and benefits. [Plaintiffs' Declarations]

In short, virtually <u>all</u> the issues are common to the Class and Sub-Class and the only differences are minor, namely, the rate of pay.

(c)     <u>The Claim of the Representative Party is Typical of the Claims of the Class</u>

Federal Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The typicality requirement is met when the representative Plaintiff's claims arise from a course of conduct by defendant that also gives rise to the claims of other class members based on the same legal theory. *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y. 1981); 1 <u>Newberg, supra</u> at § 3:13 at 326 (4th edition 2002) ("'Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought'").

---

[8]     The Class and Sub-Class may be referred to hereinafter collectively as the "Class", unless the needs of clarification dictate a differentiation.

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

The question is whether the class representatives' claims have the same essential characteristics as the claims of the class at large. (Id.) If the elements of the cause of action to be proved by the representatives are the same as those of the class, the claim is typical. *Dura-Bilt*, 89 F.R.D. at 99. (Id.)

Here, the Class Representatives (*i.e.*, the Plaintiffs) suffered the same type of injury as the rest of the Class and the Sub-Class and, there are no conflicts of interest between the representatives of the Class and the other Class Members [Plaintiffs' Declarations ¶¶ 13,15]. Each of the Plaintiffs is a member of both the Class and the Sub-Class, so each has claims in common with each of the members of the Class and the Sub-Class. The Defendant's failure to pay immediately terminating wages and its failure to comply with the requirements of the WARN Act represents, in each case, a single course of conduct resulting in injury to all Class Members including the Plaintiffs. Neither the Plaintiffs nor other Sub-Class Members received 60 days' notice or 60 days' wages and benefits, pursuant to the requirements of the WARN Act [Plaintiffs' Declarations ¶¶ 7 and 8].

Thus, the factual situation of each of the Class Representatives and the legal theories upon which the action is grounded are not only typical of the entire Class, but are identical. This is true as to both the Class and the Sub-Class.

(d)   The Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Federal Rule of Civil Procedure 23(a)(4) provides that a class action is maintainable only if "the representative parties will fairly and adequately protect the interests of the class." This element requires a two-step analysis. First, the court must determine whether the named class representatives have interests that "are free from conflicts of interest with the class they seek to represent." *Amchem Prods v. Windsor*, 521 U.S. 591, 625 (1997). Second, the court must find that the class would be represented by qualified counsel. *In re A-P-A Transport Corp. Consol. Litigation*,

15

2005 WL 3077916*5 (D.N.J. 2005).

The first element of Rule 23(a)(4) is met because Plaintiffs' counsel are "qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), cert. denied, 417 U.S. 156 (1974). Their background can be summarized as follows:

Spiro Moss Barness LLP ("Spiro Moss"), has prosecuted, over the last several years, a number of class actions in wage and hour and employment matters that have resulted in payments of unpaid wages and other benefits for thousands of workers in the state of California for tens of millions of dollars. These have included cases against high profile companies such as Starbucks, Bridgestone/Firestone, Best Buy, TJ Maxx, AIG, Coors Distributing, Jamba Juice, the parent company of Sparkletts, Old Spaghetti Factory, and many others. Spiro Moss attorneys have succeeded in contested class certification motions in a number of cases, including cases including cases against Home Depot, Bridgestone/Firestone, Indian Head Water, and Mervyn's Department Stores. [Barness Declaration, ¶ 1]

Mr. Barness holds a certification from the American Board of Certification in the area of business reorganizations, and he has practiced as a bankruptcy lawyer since 1982. He has handled a number of class action matters within the context of bankruptcy proceedings beginning in 1994. Within the past four years, he was designated co-class counsel in the bankruptcy case entitled *In Re Sutter's Place*, in the Bankruptcy Court for the Northern District of California. He has also represented employee-classes in bankruptcy cases pending in the Southern District of New York (*In Re Musicland Holding*), and in the Western District of Missouri (*In re Interstate Brands, Inc.*). He represents class claimants in the Delta Airlines Chapter 11 proceedings pending in the Southern District of New York. He is also designated class counsel in class claim proceedings in the case of *In re People's Choice Home Loan.* Mr. Barness

16

litigated class certification in the Northern District in a matter entitled *In re Zultys Technologies*, and has handled class claim matters in other sub-prime mortgage lender bankruptcies (*In re First Magnus; In re Alliance Bancorp*.; *In re Aegis; In re American Home Loan*).    [Barness Declaration,  ¶ 2]

Thus, not only does Spiro Moss practice extensively in the area of class actions, with an emphasis on employment-related class actions, Mr. Barness has developed an area of sub-specialization within Chapter 11 practice representing class claimants.

Accordingly, the four prerequisites of Rule 23(a) for class certification are met in this action.

**(2)     The Proposed Class and Sub-Class Meet the Requirements of Rule 23(B)(3)**.

In addition to meeting the prerequisites for class certification under Rule 23(a), a class must meet only one of the three alternative requirements for treatment as a class action under Fed. R. Civ. P. 23(b).  Here, the class meets the requirements of Fed. R. Civ. P. 23(b)(3).

Class Certification is proper under Rule 23(b)(3) where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Considerations of judicial economy and efficiency are of paramount importance and, where, as here, determination of the common, predominant issues shared by the Class Members will dispose of the matter, class certification should be ordered. *Rodger v. Electronic Data Systems Corp.,* 160 F.R.D. 532 (E.D.N.C. 1995).  A class action is the superior method of resolving this dispute because many of the claims are quite small, making individual lawsuits impracticable.  *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985); *Eisen v. Carlisle & Jacquelin,* 391 F.2d at 566-567. As shown above, common questions of fact and law overwhelmingly predominate

17

over the minor questions affecting individual claims.

In addition, Fed. R. Civ. P, 23(b)(3) requires that the Plaintiffs demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Four factors are set forth in Fed. R. Civ. P. 23 (b)(3) to guide the court's determination as to whether a class action is superior and whether issues of fact and law common to Class Members predominate over individual matters:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Here, neither the Plaintiffs nor any of the other Class Members have an interest in individually controlling the prosecution of separate actions.  [Plaintiffs' Declarations ¶ 12].  To Plaintiffs' knowledge, at the time of executing their declarations, no other litigation concerning the controversy had been commenced. [Plaintiffs' Declarations ¶ 12].  Concentrating on the WARN litigation in a class action will avoid multiple suits.  Finally, the difficulties in managing this litigation as a class action are few: the Class Members can be easily identified; the potential liability of the Defendant can be readily calculated; and there is but one combined course of conduct -- that of the Defendant -- to examine and adjudicate.  [Plaintiffs' Declarations ¶ 10, RJN, Ex "A"].

**D.**  **Class Claims Are Proper in Bankruptcy Court Even When the Putative Class Members Did Not File Individual Claims.**

The claims filed by Plaintiffs on behalf of similarly situated putative Class Members are proper pursuant to *In re First Alliance Mortgage Corp.,* 269 Bankr. 428,

18

444 (D. C.D. Cal. 2001). The *First Alliance* Court held that the filing of a class action in bankruptcy, by an individual on behalf of similarly situated individuals, serves as a timely filed claim on behalf of all other class members. <u>Id.</u> at 445, n 16.

Additionally, four circuit courts have held that the Bankruptcy Code unconditionally allows class claims whenever the criteria of Rule 23 is met. *Reid v. White Motor Corp.*, 866 F.2d 1462, 1469 (6th Cir. 1989) (noting that the "more equitable resolution" is to permit class claims in bankruptcy proceedings); *Birting Fisheries, Inc. v. Lane*, 92 F.3d 939, 940 (9th Cir. 1996) ("[W]e conclude that the bankruptcy code should be construed to allow class claims," noting that "[t]hree circuits have previously considered this question and all have construed the code as we do.") (emphasis added), citing *Reid*; *In re Charter Co.*, 876 F.2d 866 (11th Cir. 1989); and *American Reserve*, 840 F.2d at 493.

\* \* \*

Since the requirements of Rule 23 have all been met, and certification is appropriate under the foregoing bankruptcy authorities, as discussed above, class certification should be granted.

### E. <u>Appointment of Class Representatives</u>

Plaintiffs request that Amy Eberly, Erin Goodman and Jamie Kirk be appointed Class Representatives. The Plaintiffs have been diligent in pursuing the Class claims and have worked with counsel in initiating and prosecuting the action; they have no conflict of interest with other Class Members; and they have and will fairly and adequately represent the interests of the Class. [Plaintiffs' Declarations, ¶¶ 9, 11-14, 16 ] For these reasons, Plaintiffs ask that they be appointed Class Representatives.

### F. <u>Appointment of Class Counsel</u>

Plaintiffs request that Spiro Moss Barness be appointed as Class Counsel

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

herein.  As shown, such counsel is uniquely suited to handle class actions in Chapter 11 settings, and has already engaged in substantial litigation in this matter, benefitting the proposed class with  a "learning curve" and experience in this case going back to September 2007 [Barness Declaration].  Additionally, as shown by the Plaintiffs' Declarations, Spiro Moss Barness has worked with Plaintiffs in connection with this matter.  [Plaintiffs' Declarations, ¶¶ 9, 14]

### G.    The Form and Manner of Service of Notice

Attached hereto as Exhibit "A" and incorporated herein by this reference is the form of Notice Plaintiffs propose to distribute in the even this matter is certified under Rule 23.  [Barness Declaration, Exhibit "A"]  Plaintiffs further submit that service of the proposed Notice of Class Action by First Class Mail, postage prepaid, to each member of the class at the member's last known address as shown on the Defendant's records is the best notice practicable under all the circumstances. [See, *e.g.*, Debtor's Schedule E, RJN, Ex "A"]

Fed. R. Civ. P. 23(c)(2)(B) mandates that for any class certified under Rule 23(b)(3), the Court must determine the best notice practicable under the circumstances, including individual notice to potential class members and that notice must concisely and clearly state in plain, easily understood language:

- the nature of the action;
- the definition of the class certified;
- the class claims, issues or defenses;
- that a class member may enter an appearance through counsel if the member so desired;
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and
- the binding effect of a class judgement on class members under Rule 23(c)(3).

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

Rule 23(c)(2)(B)

Although no rigid standards govern the contents of notice to Class Members, the notice must "fairly apprise the prospective members of the Class of the [proceedings] and of the options that are open to them in connection with [the] proceedings," *Grunin v. International House of Pancakes*, 513 F.2d 114, 122 (8th Cir.), <u>cert. denied,</u> 423 U.S. 864, 96 S. Ct. 124 (1975), *quoting Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 323 F.Supp. 364, 378 (E.D. Pa. 1970), <u>aff'd sub nom,</u> *Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30 (3rd Cir. 1971). Individual mailings to each Class Member's last known address is appropriate. *Whit v. National Football League*, 41 F.3d 402, 408 (8th Cir. 1994); *Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1983); *Steiner v. EquimarkCorp.,* 96 F.R.D. 603, 614 (W.D. Pa. 1983); *Trist v First Federal Saving & Loan Association, 89* F.R.D. 1, 2 (E.D. Pa. 1980).

Here, the contents of the proposed Notice are sufficient. The Notice summarizes the nature of the pending LC 203 and WARN Act litigation and apprises the proposed Class, among other things, of the Class and Sub-Class definitions; of the claims, issues and defenses; that complete information regarding the action is available upon request from Class Counsel, that any Class Member may opt-out of the Class or Sub-Class, that if they do not opt-out, they will be bound by any judgment or settlement in the litigation and that if they do not opt-out, they may appear by their own counsel. In short, the proposed Notice satisfies all the requirements of Rule 23(c)(2)(B).

The names and addresses of all the putative Class Members are contained in Defendant's records. Once Plaintiffs have been provided with those, Plaintiffs' counsel will mail the Notice of Class Action by First Class Mail, postage prepaid to the last known address of each of the putative Class Members so that they will have at least 30 days from the date of mailing, to object to Class certification and to opt-out of the Class. Plainly, this is the best practicable notice under the circumstance, and one

21

that has already been approved by a Bankruptcy Court in the Central District of California. [Barness Declaration, ¶ 18]

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order:

1. Certifying a class and a subclass as defined in the Complaint herein [RJN, Ex "B"]

2. Appointing Plaintiffs as the Class Representatives;

3. Appointing the undersigned attorneys as counsel for the Proposed Class and the Proposed WARN Act Subclass;

4. Approving the proposed Class Notice, attached as Exhibit "A" to the Barness Declaration; and

5. Granting such other and further relief as this Court may deem just and proper.

Dated: April 18, 2008        Spiro Moss Barness LLP

/s/ DANIEL I. BARNESS
_____
Daniel I. Barness
Attorneys for Plaintiffs Amy Eberly, Erin Goodman and Jamie Kirk individually and on behalf of all others similarly situated

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

**DECLARATION OF AMY EBERLY**

I, AMY EBERLY, declare:

I am one of the proposed class representatives with respect to the claims of former Ownit Mortgage Solutions, Inc. ("Ownit" or "Defendant") employees for damages under the WARN Act (based on Ownit's failure to give 60 days's written notice of a mass layoff and/or "plant closing") and claims under California Labor Code § 203 for wage continuation (for its failure to pay final wages immediately upon the termination of employment). I make this declaration in support of the Motion seeking an extension of the Bar Date or, alternatively, for leave to file a late claim. The facts stated herein are known personally to me to be true, and if called upon to testify as to the truth of such facts, I could and would so testify.

1. I was employed by Ownit Mortgage Solutions, Inc., Debtor and Defendant in these proceedings ("Ownit"). I was employed by Ownit continuously from May 2001 to December 5, 2006, with the job title Loan Document Processor.

2. During that period, I worked at Debtor Ownit Mortgage Solutions' office, located in Agoura Hills, California ("Facility"), which employed between 100 and 150 regularly-employed people during that time.

3. On December 5, 2006, prior to the Petition Date, Ownit, with as little as two hours' notice, I was told, along with everyone else who was present at the Facility, that my employment was terminated effective immediately. I was told that I should clean out my desk and leave.

4. At the time of my lay-off, I was earning $15.00 per hour, plus fringe benefits including, health insurance (medical, dental and vision), long-term disability insurance and life insurance.

5. As of my termination, in addition to unpaid wages, Ownit owed me wages for paid time off (PTO), accrued and unpaid vacation wages, among other things.

6. I am informed and believe that all former employees laid off by Ownit in

23

December 2006 were not paid all of their final wages, both commissions and/or paid time off or vacation wages.

7. At no time prior to December 5, 2006 did I receive any written notice regarding the WARN Act, nor, to the best of my knowledge, did any of the other former employees of the Facility who were terminated on or about that date. I believe that my WARN rights as well as the WARN rights of the other employees of Defendant laid off on or about December 5, 2006 at Defendant's Facility were violated.

8. Since December 5, 2006, I have not received nor, to the best of my knowledge, have any of the other former employees of Ownit received base wages due at the time of termination, nor any payments under the WARN Act or any wage continuation payments under LC 203.

9. Following my termination, I retained Spiro Moss as my counsel to assert claims under the WARN Act and under the California Labor Code on my behalf as well as a class claim on behalf of the other employees of Ownit who were laid off from a Facility as part of, or as the foreseeable result of the mass layoff or plant closing that Ownit ordered and carried out beginning on December 5, 2006.

10. Because the circumstances of my termination are the same as those of the other former employees of Ownit who were laid off before December 28, 2006, the factual and legal issues bearing on my WARN and LC 203 claims and such claims of the other class members (except for damages) are the same.

11. I am eager and wiling to prosecute this action on behalf of the other former employees of Ownit who were laid off on or after December 5, 2006 and before December 28, 2006. I have actively assisted and will continue to actively assist my counsel in the prosecution of this action.

12. The relatively small size of my claim, my financial situation and the costs of attorneys' fee left me unable to pursue this claim as a sole litigant. I believe that

24

the other former employees of Ownit who were laid off in December 2006 are similarly situated and unable to pursue their rights under the WARN Act and under the California Labor Code except through a class action.  To my knowledge there is no other litigation pending which involves the WARN rights of the former employees of Ownit, nor is there any interest by members of the proposed class in individually controlling the prosecution of this or any other similar action.

13. The sudden termination of  my employment and Ownit's failure to pay my final wages, especially since both happened shortly before the holidays and without any warning,  has caused me severe financial hardship, from which I have not yet fully recovered.  Had I received 60 days' warning that my employment would be terminated, I could have begun searching for a new job and I would not have had the interruption of income that came as a result of the sudden termination of my employment.  In part based upon my conversations with other Ownit employees, I believe these circumstances describe virtually all Ownit employees who suffered the same kind of sudden termination without pay as I did.

14. I have actively assisted and will continue to actively assist my counsel in the prosecution of this action.  I am ready, willing and able to represent all similarly situated former employees of Ownit in this action.

15. I am informed and believe that I have no conflict of interest with any potential class members.

16. I have spoken with Daniel I. Barness, and have received numerous communications from hin regarding this case.  I believe that Mr. Barness and Spiro Moss Barness LLP  are  well qualified to serve as class counsel.  I believe these attorneys are ideally suited to represent the class because of their combination of expertise in class actions in general and class actions within a bankruptcy context.

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

1      I declare under penalty of perjury under the laws of United States of America

2  that the foregoing is true and correct, and that this Declaration was executed this April

3  18, 2008  at Los Angeles, California.

4                           Amy Eberly

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

# DECLARATION OF ERIN GOODMAN

I, **ERIN GOODMAN**, declare:

I am one of the proposed class representatives with respect to the claims of former Ownit Mortgage Solutions, Inc. ("Ownit" or "Defendant") employees for damages under the WARN Act (based on Ownit's failure to give 60 days's written notice of a mass layoff and/or "plant closing") and claims under California Labor Code § 203 for wage continuation (for its failure to pay final wages immediately upon the termination of employment). I make this declaration in support of the Motion seeking an extension of the Bar Date or, alternatively, for leave to file a late claim. The facts stated herein are known personally to me to be true, and if called upon to testify as to the truth of such facts, I could and would so testify.

1.  I was employed by Ownit Mortgage Solutions, Inc., Debtor and Defendant in these proceedings ("Ownit"). I was employed by Ownit continuously for more than six months prior to the Petition Date, with the job title Account Executive. During that period, I worked at Debtor Ownit Mortgage Solutions' office, located in North Hollywood, California ("Facility"), which employed between 100 and 150 regularly-employed people for at least six months prior to December 5, 2006.

2.  On December 5, 2006, prior to the Petition Date, Ownit, with as little as two hours' notice, I was told, along with everyone else who was present at the Facility, that my employment was terminated effective immediately. I was told that I should clean out my desk and leave.

3.  At the time of my lay-off, I was earning $2,600 per month, plus fringe benefits including, health insurance (medical, dental and vision), long-term disability insurance and life insurance.

4.  As of my termination, in addition to unpaid wages, Ownit owed me wages for paid time off (PTO), accrued and unpaid vacation wages, among other things.

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

5.    I am informed and believe that all former employees laid off by Ownit in December 2006  were not paid all of their final wages, both commissions and/or paid time off or vacation wages.

6.    At no time prior to December 5, 2006 did I receive any written notice regarding the WARN Act, nor, to the best of my knowledge, did any of the other former employees of the Facility who were terminated on or about that date.  I believe that my WARN rights as well as the WARN rights of the other employees  of Defendant laid off on or about December 5, 2006 at Defendant's Facility were violated.

7.    Since December 5, 2006, I have not received nor, to the best of my knowledge, have any of the other former employees of Ownit received base wages due at the time of termination, nor any payments under the WARN Act or any wage continuation payments under LC 203.

8.    Following my termination, I retained Spiro Moss as my counsel to assert claims under the WARN Act and under the California Labor Code on my behalf as well as a class claim on behalf of the other employees of Ownit who were laid off from a Facility  as part of, or as the foreseeable result of the mass layoff or plant closing that Ownit ordered and carried out beginning on December 5, 2006.

9.    Because the circumstances of my termination are the same as those of the other former employees of  Ownit who were laid off before December 28, 2006, the factual and legal issues bearing on my WARN and LC 203 claims and such claims of the other class members (except for damages) are the same.

10.   I am eager and wiling to prosecute this action on behalf of the other former employees of Ownit who were laid off on or after December 5, 2006 and before December 28, 2006.  I have actively assisted and will continue to actively assist my counsel in the prosecution of this action.

11.   The relatively small size of my claim, my financial situation and the costs of

| | |
|---|---|
| 1 | attorneys' fee left me unable to pursue this claim as a sole litigant. I believe that |
| 2 | the other former employees of Ownit who were laid off in December 2006 are |
| 3 | similarly situated and unable to pursue their rights under the WARN Act and |
| 4 | under the California Labor Code except through a class action. To my |
| 5 | knowledge there is no other litigation pending which involves the WARN rights |
| 6 | of the former employees of Ownit, nor is there any interest by members of the |
| 7 | proposed class in individually controlling the prosecution of this or any other |
| 8 | similar action. |
| 9 | 12. The sudden termination of my employment and Ownit's failure to pay my final |
| 10 | wages, especially since both happened shortly before the holidays and without |
| 11 | any warning, has caused me severe financial hardship, from which I have not |
| 12 | yet fully recovered. Had I received 60 days' warning that my employment |
| 13 | would be terminated, I could have begun searching for a new job and I would |
| 14 | not have had the interruption of income that came as a result of the sudden |
| 15 | termination of my employment. In part based upon my conversations with |
| 16 | other Ownit employees, I believe these circumstances describe virtually all |
| 17 | Ownit employees who suffered the same kind of sudden termination without |
| 18 | pay as I did. |
| 19 | 13. I have actively assisted and will continue to actively assist my counsel in the |
| 20 | prosecution of this action. I am ready, willing and able to represent all similarly |
| 21 | situated former employees of Ownit in this action. |
| 22 | 14. I am informed and believe that I have no conflict of interest with any potential |
| 23 | class members. |
| 24 | 15. I have spoken with Daniel I. Barness, and have received numerous |
| 25 | communications from hin regarding this case. I believe Spiro Moss Barness |
| 26 | LLP are well qualified to serve as class counsel. I believe these attorneys are |
| 27 | ideally suited to represent the class because of their combination of expertise in |
| 28 | class actions in general and class actions within a bankruptcy context. |

29

1    I declare under penalty of perjury under the laws of United States of America

2  that the foregoing is true and correct, and that this Declaration was executed this April

3  18, 2008  at Los Angeles, California.

4                                                    _Erin Goodman_____  __
                                                     Erin Goodman

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

# DECLARATION OF JAMIE KIRK

I, **JAMIE KIRK**, declare:

I am one of the proposed class representatives with respect to the claims of former Ownit Mortgage Solutions, Inc. ("Ownit" or "Defendant") employees for damages under the WARN Act (based on Ownit's failure to give 60 days's written notice of a mass layoff and/or "plant closing") and claims under California Labor Code § 203 for wage continuation (for its failure to pay final wages immediately upon the termination of employment). I make this declaration in support of the Motion seeking an extension of the Bar Date or, alternatively, for leave to file a late claim. The facts stated herein are known personally to me to be true, and if called upon to testify as to the truth of such facts, I could and would so testify.

1. I was employed by Ownit Mortgage Solutions, Inc., Debtor and Defendant in these proceedings ("Ownit"). I was employed by Ownit continuously during the six months prior to December 5, 2006, with the job title Submissions Administrator / Setup Desk.

2. During that period, I worked at Debtor Ownit Mortgage Solutions' office, located in North Hollywood, California ("Facility"), which employed between 100 and 150 regularly-employed people during that time.

3. On December 5, 2006, prior to the Petition Date, Ownit, with as little as two hours' notice, I was told, along with everyone else who was present at the Facility, that my employment was terminated effective immediately. I was told that I should clean out my desk and leave.

4. At the time of my lay-off, I was earning $1,600 per month, plus fringe benefits including, health insurance (medical, dental and vision), long-term disability insurance and life insurance.

5. As of my termination, in addition to unpaid wages, Ownit owed me wages for paid time off (PTO), accrued and unpaid vacation wages, among other things.

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

6.  I am informed and believe that all former employees laid off by Ownit in December 2006 were not paid all of their final wages, both commissions and/or paid time off or vacation wages.

7.  At no time prior to December 5, 2006 did I receive any written notice regarding the WARN Act, nor, to the best of my knowledge, did any of the other former employees of the Facility who were terminated on or about that date. I believe that my WARN rights as well as the WARN rights of the other employees of Defendant laid off on or about December 5, 2006 at Defendant's Facility were violated.

8.  Since December 5, 2006, I have not received nor, to the best of my knowledge, have any of the other former employees of Ownit received base wages due at the time of termination, nor any payments under the WARN Act or any wage continuation payments under LC 203.

9.  Following my termination, I retained Spiro Moss as my counsel to assert claims under the WARN Act and under the California Labor Code on my behalf as well as a class claim on behalf of the other employees of Ownit who were laid off from a Facility as part of, or as the foreseeable result of the mass layoff or plant closing that Ownit ordered and carried out beginning on December 5, 2006.

10. Because the circumstances of my termination are the same as those of the other former employees of Ownit who were laid off before December 28, 2006, the factual and legal issues bearing on my WARN and LC 203 claims and such claims of the other class members (except for damages) are the same.

11. I am eager and wiling to prosecute this action on behalf of the other former employees of Ownit who were laid off on or after December 5, 2006 and before December 28, 2006. I have actively assisted and will continue to actively assist my counsel in the prosecution of this action.

12. The relatively small size of my claim, my financial situation and the costs of

attorneys' fee left me unable to pursue this claim as a sole litigant.  I believe that the other former employees of Ownit who were laid off in December 2006 are similarly situated and unable to pursue their rights under the WARN Act and under the California Labor Code except through a class action.  To my knowledge there is no other litigation pending which involves the WARN rights of the former employees of Ownit, nor is there any interest by members of the proposed class in individually controlling the prosecution of this or any other similar action.

13.  The sudden termination of  my employment and Ownit's failure to pay my final wages, especially since both happened shortly before the holidays and without any warning,  has caused me severe financial hardship, from which I have not yet fully recovered.  Had I received 60 days' warning that my employment would be terminated, I could have begun searching for a new job and I would not have had the interruption of income that came as a result of the sudden termination of my employment.  Bsed upon my conversations with other Ownit employees, I believe these circumstances describe virtually all Ownit employees who suffered the same kind of sudden termination without pay as I did.

14.  I have actively assisted and will continue to actively assist my counsel in the prosecution of this action.  I am ready, willing and able to represent all similarly situated former employees of Ownit in this action.

15.  I am informed and believe that I have no conflict of interest with any potential class members.

16.  I have spoken with Daniel I. Barness, and have received numerous communications from hin regarding this case.  I believe that Mr. Barness and Spiro Moss Barness LLP  are  well qualified to serve as class counsel.  I believe these attorneys are ideally suited to represent the class because of their combination of expertise in class actions and bankruptcy .

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

1        I declare under penalty of perjury under the laws of United States of America

2  that the foregoing is true and correct, and that this Declaration was executed this April

3  18, 2008  at Los Angeles, California.

Jamie Kirk

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

# DECLARATION OF DANIEL I. BARNESS

I, DANIEL I. BARNESS, hereby declare that:

I am an attorney at law duly licensed to practice before all courts of the state of California and before this Court. The facts stated herein are known personally to me to be true, and if called upon to testify as to the truth of such matters, I could and would so testify.

1. My firm, Spiro Moss Barness LLP ("Spiro Moss"), is well qualified to represent the class in this case. Partners in Spiro Moss have prosecuted, over the last several years, a number of class actions in wage and hour matters that have resulted in payments of unpaid wages and other benefits for thousands of workers in the state of California for tens of millions of dollars. These have included cases against high profile companies such as Starbucks, Bridgestone/Firestone, Best Buy, TJ Maxx, AIG, Coors Distributing, Jamba Juice, the parent company of Sparkletts, Old Spaghetti Factory, and many others. Spiro Moss attorneys have succeeded in contested class certification motions in a number of cases, including cases including cases against Home Depot, Bridgestone/Firestone, Indian Head Water, and Mervyn's Department Stores.

2. Since 1998, I have held a certification from the American Board of Certification in the area of business reorganizations, and I have practiced as a bankruptcy lawyer since 1982. I have handled a number of class action matters within the context of bankruptcy proceedings beginning in 1994. Within the past four years, I was designated co-class counsel in the bankruptcy case entitled *In Re Sutter's Place*, in the Bankruptcy Court for the Northern District of California. I was also designated co-class counsel in class claim proceedings in the case of *In re People's Choice Home Loan*, which is pending in the Central District of California, Santa Ana Division. I have has also been designated class counsel

35

in bankruptcy cases pending in the Southern District of New York (*In Re Musicland Holding*), and in the Western District of Missouri (*In re Interstate Brands, Inc.*). I represent class claimants in the Delta Airlines Chapter 11 proceedings pending in the Southern District of New York. I litigated class certification in the Northern District in a matter entitled *In re Zultys Technologies*, and have handled class claim matters in other sub-prime mortgage lender bankruptcies (*In re First Magnus; In re Alliance Bancorp*; *In re Aegis; In re American Home Loan*).

Thus, not only does Spiro Moss practice exclusively in the area of class actions, with an emphasis on employment-related class actions, I have developed an area of sub-specialization within Chapter 11 practice representing class claimants.

3.   I caused an Adversary Proceeding entitled *Eberly et al. v. Ownit Mortgage Solutions, Inc.*, Adv. No. 07-01212 KT (the "Adversary Proceeding") to be commenced on September 12, 2007. The Complaint therein, styled as a class action, states claims for (1) Damages for Failure to Timely Pay Wages; (2) Damages Pursuant to the WARN Act; and (3) Declaratory Relief that certain components of such claims are entitled to administrative expense treatment pursuant to section 503(b)(1)(A)(ii). The Adversary Proceeding seeks declaratory relief and damages for Debtor's failure to give any written notice to its affected employees of the mass termination of their employment and its failure to immediately pay them their final wages. The claims arise from Debtor's violation of the notice provisions of the Worker Adjustment and Retraining Notification Act [29 U.S.C. §§ 2101, et seq. and California Labor Code §§ 1400 et seq.] (collectively, the "WARN Act"), which require that, prior to effecting a mass layoff or plant closing, an employer must give not fewer than sixty days' written notice to the affected employees and to certain governmental agencies. The Complaint alleges the basis for a class and

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

subclass as to these claims. The Class consists of all persons whose employment was terminated with payment of final wages, and who therefore qualify for wage continuation under LC 203, and the Sub-Class consists of those employees who were **also** employed at a WARN Act "facility" at that time, and who are entitled to WARN damages.

4. On or about December 1, 2007, in connection with its showing of feasibility with respect to the Plan, Debtor filed a motion (the "Reserve Motion"), seeking authorization to establish a reserve account in part to cover the "WARN-related Claims" of Plaintiffs and the Proposed Class, consisting of claims under the WARN Act and under LC 203. According to **Debtor's** calculation set forth in its Reserve Motion Reply, a true and correct copy of which is attached to the RJN as Exhibit "D", there is a total potential liability of $1,537,047.32 on account of the WARN claims, of which $978,121.02 is attributable to the post-petition period, and $558,926.30 is attributable to the pre-petition period (*i.e.,* priority claims under section 507(b)(4)[9]. Also according to Debtor's figures, $940,153.67 (or 43% of the total calculated by Debtor as its potential liability) is attributable to claims under LC 203. Of the aggregate of the claims -- WARN Act claims and LC 203 claims -- according to Debtor's figures, $1,135,824.99, or 46% of the total claim is attributable to pre-petition/section 507(b)(4) priority.

5. Following a compromise of the parties, in which I participated, the Court approved the Reserve Motion, by incorporating it into the Confirmation Order. A true and correct copy of the Confirmation Order is attached to the RJN as Exhibit "C" to the Request for Judicial Notice.

---

[9] Plaintiffs do not agree with Debtor's figures, and reserved all rights in connection with a compromise reached regarding the Reserve Motion.

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

6. On or about November 6, 2007, Debtor filed a motion to dismiss the Adversary Proceeding (the "Dismissal Motion"). The Court's tentative ruling was to <u>deny</u> that motion. At the conclusion of the initial hearing on the Dismissal Motion, held on November 29, 2007, which I attended, the Court took the matter under submission, stating that it would announce its final decision on or before February 6, 2008. On February 6, 2008, the Court announced its decision to reverse its position which had been stated in the tentative ruling, and to *grant* the Dismissal Motion. Thereafter, the Court issued a Memorandum of Decision, reflecting the basis for its disposition of the Dismissal Motion. The Memorandum of Decision recites:

"This motion to dismiss by defendant Ownit Mortgage Solutions ("Debtor") initially came on for hearing on November 29, 2007. The court heard argument at the initial hearing and **considered, on a tentative basis that the motion should be denied on the grounds that the claims bar date in this bankruptcy case did not apply to claims entitled to administrative status under 11 U.S.C. § 503(b)(1)(A)(ii)."** [Emphasis added.]

7. At the February 6, 2008 hearing on the Dismissal Motion, I requested that the effectiveness of the Dismissal Order be deferred to give Plaintiffs an opportunity to bring a motion seeking relief from, or an extension of, the Bar Date. The Court's Memorandum of Decision states that dismissal of the Adversary Proceeding is effective March 12, 2008.

8. On February 15, 2008, I caused to be filed a motion entitled "Motion for Order Extending the Claims Bar Date Or, Alternatively, for Leave to File Late Claim" (the "Late Claim Motion"). The Late Claim Motion - which sought extension of the Bar Date under Rule 3003 (c)(3); leave to file a "tardy claim" under section 503(a) and/or relief from the Bar Date under Rule 9006 (b) - arises out of a ruling made in the context of the Adversary Proceeding, which was filed as

38

a class action.  The Motion was brought after Debtor/Defendant's motion seeking dismissal of the Adversary Proceeding was granted. The Court granted the Dismissal Motion on the basis that employee claims, including those under section 503(b)(1)(A)(ii),  had not been asserted through the filing of proofs of claim prior to the Bar Date.

9.   On March 18, 2008, the Court vacated its order dismissing the Adversary Proceeding, and held a hearing on March 25, 2008 with respect to that order.  At the hearing, I requested that the Court <u>not</u> dismiss the Adversary Proceeding, and mentioned the possibility of making a class certification motion outside the context of the Adversary Proceeding, if necessary.

10.  On March 28, 2008, three days after the hearing with respect to the Proposed Dismissal Order, I received from a putative class member a letter and proposed stipulation (the "Release Stipulation") which he had received from Pachulski, Stang, et al., now acting as "Special Counsel for the Ownit Liquidating Trust"[10]. The Release Stipulation arises from an omnibus objection to duplicative  claims or claims which are in excess of scheduled amounts and/or above statutory priority limits.  The Release Stipulation purports to "settle" the "disputed" claim for the amount of the "Scheduled Claim."  In my view,  there is no consideration for the release/waiver solicited, in that the amount of the "settlement" is simply the amount already scheduled by Debtor as undisputed and subject to distribution in full pursuant to the Confirmation Order.

---

[10]   A true and correct copy of the Release Stipulation is attached as Exhibit "D" to the Barness Declaration to the below-described Plaintiffs' Request for (1) Status Conference; (2) Scheduling Order and (3) Coordination of Hearings, which Plaintiffs will seek to have considered at the same time as the present Motion.  [Barness Declaration]

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

11. In exchange for "allowance" of an amount already scheduled as "allowed", the Release Stipulation provides:

"The Creditor hereby waives any claim that he may be able to assert under (i) Federal WARN; (ii) California WARN; (iii) California Labor Code; (iv) the WARN Action; or (v) any other Federal or State law regarding employee wages and benefits."

The Release Stipulation, if approved by the Court, would purport to effect a waiver of the claims in the Adversary Proceeding with no consideration other than payment of an "allowed claim" which the estate already has an unconditional obligation pay pursuant to the Plan and the Confirmation Order.

12. The Release Stipulation contains a recital regarding the WARN Action and the Late Claim Motion, reciting that the claims asserted therein are for a total of not less than $3.9 million, and I have doubt that it seeks to effect a waiver of the claims asserted in the Adversary Proceeding as to the purportedly releasing the creditor.

13. On April 3, 2008, the Court issued an Order (the "Late Claim Order"), granting, in part, the Late Claim Motion. In connection with that Order, the Court issued a Memorandum of Decision (the "Late Claim Memorandum of Decision" or the "Memorandum of Decision") [RJN Ex "F"] The Late Claim Order extends the Bar Date to permit the assertion of WARN claims entitled to administrative expense priority pursuant to section 503(b)(1)(A)(ii).[11]

_____

[11] The Late Claim Memorandum of Decision and Order exclude from their scope pre-petition priority claims otherwise entitled to treatment under section 507(b)(4) and make no mention of post-petition claims under California Labor Code Section 203, nor do they specifically refer to section 503(a) as a basis for leave to file a "tardy" request for payment of an administrative expense, notwithstanding that the Late Claim Motion, respectively, referred to such claims and asked for relief under section 503(a), in addition to seeking relief under Rules 3003(c)(3) and 9004(6) as to the WARN Claims. For these reasons, I have filed a motion for reconsideration of the Late Claim Order, which is scheduled to be heard

40

14. On April 4, 2008, I caused to be filed a pleading entitled "Plaintiffs' Request for (1) Status Conference; (2) Scheduling Order and (3) Coordination of Hearings" in part to bring to the Court's attention the solicitation of waivers by way of the Release Stipulation and requesting the implementation of the procedural matters described in the title of that pleading. I will seek to have the Request for Status Conference, etc. considered at the same time as the present Motion.

15. On April 13, 2008, I filed a Motion for Reconsideration of the Late Claim Order. That motion is scheduled to be heard at the same date and time as the current motion.

16. Based on figures provided to me by Debtor, I have determined that there are not fewer than 327 persons in the Class and Sub-Class, consisting of 174 persons in the Class, and not fewer than 153 in the Sub-Class.

17. Attached hereto as Exhibit "A" and incorporated herein by this reference is the form of Notice I would propose to distribute in the even this matter is certified under Rule 23.

18. I believe the Notice procedures and the proposed form of notice insure the best practicable notice under the circumstance. This form of notice and this procedure was approved by Judge Kwan of the Santa Division in the *People's Choice* matter.

a the same time as this Motion.

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

19. I am ready, willing and able to vigorously prosecute this action. Further, I am informed and believe that I have no actual or apparent conflicts of interest with any of the putative class members.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration was executed this April 18, 2008 at Los Angeles, California.



Daniel I. Barness

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

**EXHIBIT "A"**

MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS

Daniel I. Barness
    SBN 104203, daniel@spiromoss.com
**SPIRO MOSS BARNESS LLP**
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064
Telephone:  (310) 235-2468
Facsimile:   (310) 235-2456

Attorneys for Plaintiffs Amy Eberly, Erin Goodman, and Jamie Kirk, individually and on behalf of all others similarly situated

# UNITED  STATES BANKRUPTCY COURT

## CENTRAL  DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | CASE NO.  06-12579 KT |
| OWNIT MORTGAGE SOLUTIONS, INC., | Chapter 11 |
| | ADV.  NO.  071212 KT [CLASS ACTION] |
| Debtor. | |
| _____ | **NOTICE OF CLASS ACTION** |
| AMY EBERLY, ERIN GOODMAN AND JAMIE KIRK, individually and on behalf of all others similarly situated, | Date:        [No Hearing Required] Time: Place:      Courtroom 301 |
| Plaintiffs | |
| v. | |
| OWNIT MORTGAGE SOLUTIONS, INC., | |
| Defendant. | |
| _____ | |

NOTICE OF CLASS ACTION

PLEASE READ THIS NOTICE CAREFULLY AS IT MAY AFFECT YOUR RIGHTS.

TO:     Former California employees of Defendant Ownit Mortgage Solutions, Inc. ("Ownit") who were terminated without cause from their employment at one of Defendant's facilities in California, on December 5, 2006 or thereafter without being paid immediately upon termination wages then due and/or whose employment by Ownit was terminated as part of, or as the reasonably expected consequence of, the mass layoff or plant closing, as defined by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101 et seq. and/or California Labor Code § 1400 et seq. (the "WARN Act"), at the Defendants' Facility, who do not file a timely request to opt-out of the class.

SUBJECT:     The right of former employees of Defendants whose rights under the California Labor Code and/or the WARN Act were violated, to benefit from the above lawsuit to recover:

(a)  For all Class members:  30 days' wages pursuant to California Labor Code section 203; and/or

(b)  For qualifying class members under the WARN Act:  60 days' wages and benefits for each class member under the federal and California WARN Acts.

[Note:  If you were employed at a qualifying "Facility", as defined in the WARN Act, you may be entitled to remedies described in both (a) and (b) above.]

The foregoing claims are in addition to claims, if any, you may have for unpaid wages as scheduled in Ownit's Schedule E filed with the Bankruptcy Court.

DATE:  _____

<u>The Nature of the Action</u>

Former employees (the "Plaintiffs") have filed a lawsuit in the United States Bankruptcy Court for the Central Division of California, San Fernando Valley Division, against Defendant Ownit Mortgage Solutions, Inc. ("Ownit" or "Defendant")  for the recovery of:

(1)  For all  class members: 30 days' wages and benefits for each class member pursuant to California Labor Code section 203; and

 (2)  For WARN Act Sub-Class members: 60 days' wages and benefits for each class member under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101 et seq. and Cal. Labor Code §§ 1400 et seq. (the "WARN Act").

The name of the lawsuit is the above captioned action, <u>Eberly, et al., Plaintiffs v. Ownit Mortgage Solutions, Inc., Defendant</u>, (the "Action").

The Plaintiffs, all of whom are former employees of Defendants, claim that under California Labor Code section 203 they are, together with all other former Ownit employees  whose employment was terminated and who were not immediately thereafter paid wages which had accrued as of the date of such termination, that they are entitled to "wage continuation" for a period of 30 days following their termination.   They further claim under the WARN Act, that they and the other former employees who were terminated without cause from their employment at one of Defendants' California Facilities, qualifying as a "Facility" for purposes of the WARN Act  (individually a "Facility") during the period from December 5, 2006, or thereafter as part of, or as the reasonably expected consequence of, the mass layoff or plant closing, as defined by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101 et seq. (the "WARN Act"), were entitled to receive from Defendant 60 days' advance written notice of their terminations, and, having not received such notice, are entitled to an award of 60 days' wages and benefits.


The former employees who initiated this lawsuit are represented by Daniel Barness of Spiro Moss Barness, LLP, 11377 Olympic Blvd., 5th Floor; Los Angeles, CA 90064; (310) 235-2468.  The law firm of Spiro Moss Barness has had extensive experience litigating claims under the WARN Act and other employee rights statutes and bankruptcy litigation.

**NOTICE OF CLASS ACTION**

1    Defendants deny the material allegations of the Complaint and also assert several defenses

2    for the LC 203 claims and the WARN Act claims, and they therefore oppose the Plaintiffs' claims.

3    If some or all of Defendants' defenses are sustained, the entire class claim or your claim may be

4    disallowed in whole or in part.

5

6    Class Certification and the Appointment of Class Representatives and Class Counsel

7    The Court has recently certified this case as a Class Action.  The Class consists of all  Former

8    California Employees, including those listed in Defendant's Schedule E, whose employment by

9    Defendant was terminated on or about December 5, 2006 and thereafter, but not later than the

10   Petition Date, and who are entitled to Wage Continuation pursuant to Labor Code § 203; and a

11   subclass thereof, consisting of those California Former Employees who are, in addition to their

12   entitlement to Wage Continuation,  also entitled to damages under the WARN Act  (the "WARN Act

13   Subclass") and who do not file a timely request to opt-out of the Class.

14

15   If the Action is successful, Class members will be entitled to receive their unpaid wages and

16   benefits for each day that they did not receive written notice of their impending termination, up to a

17   maximum of 30 days for all Class members and 60 days for the WARN Act Subclass members.

18

19   The Court has recently appointed Plaintiffs  Amy Eberly, Erin Goodman, and Jamie

20   Kirk as Class Representatives.

21   The Court has also recently appointed Spiro Moss Barness, LLP as Class Counsel.

22

23

24

25

26

27

28

<u>Your Rights</u>

2          If you wish to be a member of the class, you do not need to do anything and you will receive

3   whatever benefits you, if determined to be a Class Member[1], may be entitled to receive and in that

4   event you will automatically be a Class Member and be bound by any judgment (whether favorable

5   or unfavorable) or court-approved settlement in the Class.  Before court approval, you, as a Class

6   Member, will receive notice of any proposed settlement and will be afforded an opportunity to object

7   to the settlement.  You may appear by your own counsel, if you are a Class Member.  If it is

8   concluded that you are not a class member, you will not be bound by the outcome of this Action and

9   will receive no benefits from this Action.  You will receive notice if it is concluded that you are not a

10  Class Member and will be afforded the right to object.

11         If you do <u>not</u> wish to participate in this Action and wish to be excluded and, thereby, reserve

12  your rights under the WARN Act and not share in any recovery in the Action, you must sign and

13  mail the attached Exclusion Form set forth below by certified mail, return receipt requested to Spiro

14  Moss Barness LLP, attn: Daniel I. Barness, 11377 W. Olympic Blvd., Fifth Floor,  Los

15  Angeles, CA 90064.  The Exclusion Form must be received by Mr. Barness by no later than

16  _____.  All Exclusion Forms received after that date will not be effective, and any person

17  who sends a late Exclusion Form will nevertheless be a member of the class in the Action and will

18  be bound in the same way and to the same extent as all other Class Members.

19

20                              <u>The Court Has No Position On Merits</u>

21         The Court has also taken no position regarding the merits of the Plaintiffs' claims or the

22  Defendants' defenses.

23

24

25

26

27

28

---

[1]         As used hereinafter "Class" includes the the WARN Sub-Class.

<u>Additional Information</u>

If you wish information or assistance, please contact Daniel I. Barness of Spiro Moss Barness LLP at (310) 235-2468.

Please do not call or contact the Court or Defendant's Counsel for information.

Dated: _____

Spiro Moss Barness LLP

/s/ DANIEL I. BARNESS

_____

Attorneys for Plaintiffs Amy Eberly, Erin Goodman, and Jamie Kirk, individually and on behalf of all others similarly situated

1                           CLASS ACTION EXCLUSION CLAIM

2         I have read and understood the Notice of Class Action to which this Form was attached.

3         I DO NOT wish to be a class member in the action entitled Eberly, et al., Plaintiffs v. Ownit

4 Mortgage Solutions, Inc., Defendant, (the "Action").

5         I understand that by signing below and returning this Form as instructed in the Notice of

6 Class Action, I opt-out of the Class (and Sub-Class thereof).

7         I further understand that by opting out of the  Class and Sub-Class, I reserve my rights under

8 the WARN Act and/or under California Labor Code section 203 and I will **not** share in any recovery

9 in the Action.

10

11 Dated:_____           Signed:_____

12

13                                _____

14                          [Please type or print your name here]

15

16  **IF YOU DO <u>NOT</u> WISH TO BE A CLASS MEMBER IN THE ACTION** YOU MUST SIGN
AND MAIL THIS EXCLUSION FORM SET FORTH BELOW BY CERTIFIED MAIL, RETURN

17 RECEIPT REQUESTED TO SPIRO MOSS BARNESS LLP, ATTN: DANIEL I. BARNESS,
11377 W. OLYMPIC BLVD., FIFTH FLOOR,  LOS ANGELES, CA 90064.  THE

18 EXCLUSION FORM MUST BE RECEIVED BY MR. BARNESS BY NO LATER THAN
_____.  ALL EXCLUSION FORMS RECEIVED AFTER THAT DATE WILL NOT BE

19 EFFECTIVE, AND ANY PERSON WHO SENDS A LATE EXCLUSION FORM WILL
NEVERTHELESS BE A MEMBER OF THE CLASS IN THE ACTION AND WILL BE BOUND

20 IN THE SAME WAY AND TO THE SAME EXTENT AS ALL OTHER CLASS MEMBERS.

21

22

23

24

25

26

27

28

**NOTICE OF CLASS ACTION**