JEFFREY K. GARFINKLE (SBN: 153496)
BUCHALTER NEMER
A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: (949) 760-1121
Facsimile: (949) 720-0182
Email: jgarfinkle@buchalter.com

Attorneys for Defendant
THE OWNIT LIQUIDATING TRUST

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>OWNIT MORTGAGE SOLUTIONS, INC.,<br><br>Debtor. | Case No. 06-12579 KT<br><br>Chapter: 11<br><br>Adv. Proceeding No. 07-1212 KT |
| AMY EBERLY, ERIN GOODMAN AND JAMIE KIRK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>OWNIT LIQUIDATING TRUST,<br><br>Defendant. | **DEFENDANT OWNIT LIQUIDATING TRUST'S SUPPLEMENTAL BRIEF RE USE OF OPT-IN PROCEDURE**<br><br>Date: July 7, 2008<br>Time: 2:30 p.m.<br>Dept.: 301 |

BN 2006613v1

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL AND PROCEDURAL BACKGROUND | 2 |
| | A. Twenty-Three Days Before the Commencement of the Bankruptcy Case, Debtor Terminated Almost All of its California Employees. | 2 |
| | B. After the Commencement of the Bankruptcy Case, Debtor Scheduled All of its Former Employees as Holding Priority Unsecured Claims. | 3 |
| | C. Prior to the June 15, 2007 Claims Bar Date, 558 Former Employees Filed Proofs of Claim | 4 |
| | D. Three Months After the Claims Bar Date, the Instant Adversary Proceeding Was Filed. | 5 |
| | E. The Bankruptcy Court Partially Granted the Motion to Dismiss, But Has Yet to Issue an Order on that Motion or Resolve Plaintiffs' Entitlement to Claim and Recover Attorneys' Fees | 6 |
| |     1. Motion to Dismiss | 6 |
| |     2. Late Filed Claim Motion | 7 |
| |     3. Remaining Issues on Motion to Dismiss | 7 |
| |     4. Request for Attorneys' Fees and Costs | 8 |
| | F. While this Court Has Indicated its Willingness to Allow a Class Action on this Claim, It Has Not Set the Parameters of that Class. | 8 |
| | G. The Administrative Bar Date, Under the Confirmed Plan, Has Now Passed | 8 |
| III. | ARGUMENT | 9 |
| | A. This Court Has Discretion in Constructing the Class | 9 |
| |     1. Fed.R.Civ.P. 23(d)(2) Empowers this Court to Require Individual Class Members to Elect to Participate in the Class Proof of Claim. | 10 |
| |     2. Bankruptcy Case at Claim-Filing Stage is Analogous to the Damages Phase of a Class Action. | 11 |
| | B. Opt-In Procedure is Appropriate under the Circumstances | 12 |
| |     1. Bankruptcy Cases, By Nature, Are Opt-In Quasi Class Actions | 12 |
| |     2. Every Individual Employee Has Unique Issues Which She Must Consider Before Being Included in the Class. | 12 |
| |     3. Possible Assessment of Attorney's Fees Against a Creditor's Claim Supports Adoption of an "Opt-In" Procedure. | 13 |
| IV. | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

Page

**Cases**

*Arey v. Providence Hosp.*,
  55 F.R.D. 62 (D.D.C. 1972) .................................................................................................. 10

*Biben v. Card*,
  789 F.Supp.1001 (W.D. Mo. 1992) ........................................................................................ 11

*Bower v. Bunker Hill Co.*,
  114 F.R.D. 587 (E.D. Wash. 1986) .......................................................................................... 9

*Burns v. Stone Forest Indus.*,
  147 F.3d 1182 (9th Cir. 1998) .................................................................................................. 7

*Forbes v. Greater Minneapolis Area Bd. of Realtors*,
  61 F.R.D. 416 (D. Minn. 1973) ................................................................................................ 9

*In re Antibiotic Antitrust Actions*,
  333 F.Supp.267 (S.D.N.Y. 1971) ........................................................................................... 10

*Iowa v. Union Asphalt & Roadoils, Inc.*,
  281 F.Supp.391 (S.D. Iowa 1968) .......................................................................................... 10

*Philadelphia Elec. Co. v. Anaconda Amer. Brass Co.*,
  43 F.R.D. 452 (E.D. Pa. 1968) ............................................................................................... 11

*Sledge v. J.P. Stevens & Co.*,
  585 F.2d 625 (4th Cir. 1978) .................................................................................................. 11

*Smith v. Montgomery County*,
  117 F.R.D. 372 (D. Md. 1987) ............................................................................................... 10

*U.S. v. Michalek*,
  54 F.3d 325 (7th Cir. 1995) ...................................................................................................... 9

*Windsor Commc'n Group, Inc. v. Grant*,
  75 Bankr. 713 (Bankr. E.D. Pa. 1985) ................................................................................... 10

# TABLE OF AUTHORITIES
## (continued)

Page

**Federal Statutes**

**11 U.S.C.**

§ 501 ............................................................................................................................ 4
§ 503(b)(1)(A) ........................................................................................................ 5, 6
§ 503(b)(1)(A)(ii) ...................................................................................................... 13
§ 541 .......................................................................................................................... 12

**29 U.S.C.**

§ 2101, *et seq.* ........................................................................................................... 5
§ 2104(a)(6) .............................................................................................................. 13

**Fed.R.Civ.P.**

Rule 23(c)(4) ............................................................................................................. 11
Rule 23(d) ............................................................................................................ 9, 10
Rule 23(d)(1)(B) .................................................................................................. 9, 10

**Fed.R.Bankr.P.**

Rule 3003(c) ............................................................................................................... 1

**State Statutes**

**California Labor Code**

§ 203 ................................................................................................................... 6, 7, 8
§ 1400, *et seq.* ........................................................................................................... 5
§ 1404 ........................................................................................................................ 13

Defendant THE OWNIT LIQUIDATING TRUST (the "Liquidating Trust"), respectfully submits the following Supplemental Brief Re: Use of Opt-In Procedure to the Motion for Class Certification ("Class Certification Motion") filed on behalf of Plaintiffs Amy Eberly, Erin Goodman and Jamie Kirk (collectively, the "Plaintiffs").

## I. INTRODUCTION

Chapter 11, at its core, is a form of class action. All of a debtor's assets and liabilities are administered in a single proceeding, before one court. A debtor files bankruptcy schedules in which each creditor's claim is individually listed. An individual creditor, to the extent she disagrees with the amounts listed in the schedules, is required to file a claim setting forth the amount she believes is owed. To the extent there remains a dispute over the amount of the claim, the dispute is resolved through a streamlined claim objection process. Once allowed, that claim is joined with all of the other similarly classified claims and, collectively, those claims are treated in accordance with the terms of a confirmed plan.

Because of the overall class structure of bankruptcy cases, most bankruptcy courts have declined to permit class proofs of claim – particularly in those instances when easily identifiable individual claims are being asserted in the class proof of claim. Notwithstanding the general disfavor for class proofs of claims in bankruptcy cases, this Court has indicated its willingness to permit a class proof of claim to be filed for the Debtor's alleged administrative liability to certain of its former employees based upon "WARN Claims." The Court has indicated that the proposed class action is an acceptable device by which these claims might be asserted but has yet to determine the appropriate mechanism by which potential class members would be included in the proposed class.

If the Court permits a class action to go forward in this case, the most appropriate mechanism for doing so is by structuring the class as an "opt-in" class. By implementing an "opt-in" procedure, all potential class members would be given the right to be included in the proposed class by affirming their respective interests in participating in the class. Such a requirement is consistent with the Bankruptcy Code and Rules, including Rule 3003(c), which require unscheduled creditors to take affirmative action in filing their claims. The use of an opt-in

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 2006613v1   1

**DEFENDANT OWNIT LIQUIDATING TRUST'S SUPPLEMENTAL
BRIEF RE USE OF OPT-IN PROCEDURE**

procedure is particularly appropriate in this case, where the class claim asserts particularized individual claims.

Contrary to the position taken by the Plaintiffs, there is no automatic right to assert a class proof of claim, regardless of whether that claim is asserted through an adversary proceeding. The decision whether to allow a class proof of claim, and the specific structure and scope of such a proof of claim remain within the exclusive province and discretion of this Court. If this Court permits a class claim, and accompanying class action, to go forward in this case, requiring individual former employees to elect to be included in the class claim at the outset of the claim resolution process is the only appropriate procedure for doing so.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Trust recognizes this Court is generally familiar with the facts of the underlying bankruptcy case, as well as this adversary proceeding. Nevertheless, the Trust believes it is important, for the purposes of this Supplemental Brief, to recap some of the key factual and procedural aspects involved in this contested claim proceeding.[1]

### A. Twenty-Three Days Before the Commencement of the Bankruptcy Case, Debtor Terminated Almost All of its California Employees.

The Debtor was a California corporation which, near the time of its bankruptcy case, operated as a mortgage lender specializing in "subprime"/non prime loans to customers with imperfect or no credit histories for the primary purpose of purchasing residential real estate. Plaintiffs allege that the Debtor operated in California at the following offices: Agoura Hills, North Hollywood, Pasadena, San Diego, Concord, Roseville, Irvine, and Thousand Oaks. *See* Complaint, ¶ 6. In the Complaint, Plaintiff labels these offices as the "California Facilities." *Id.*

Plaintiffs allege that the Debtor employed "not fewer than 275 full-time employees in the aggregate at the California Facilities and that it employed approximately 800 full-time employees

---

[1] The Trust recognizes the class claims being asserted here are contained in an adversary proceeding, rather than a proof of claim. Nevertheless, this litigation still only involves the assertion of claims against the Debtor and now the Trust. As such, this litigation is, in fact, a contested claim proceeding.

BN 2006613v1  2

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**DEFENDANT OWNIT LIQUIDATING TRUST'S SUPPLEMENTAL
BRIEF RE USE OF OPT-IN PROCEDURE**

throughout the United States." Complaint, ¶ 8. Plaintiffs allege that the California employees were terminated on or about December 5, 2006. Complaint, ¶¶ 2, 9.[2]

### B. After the Commencement of the Bankruptcy Case, Debtor Scheduled All of its Former Employees as Holding Priority Unsecured Claims.

Based upon numerous considerations and events (none of which are relevant for the purposes of this Supplemental Brief or the Class Certification Motion), Debtor voluntarily filed its Chapter 11 petition on December 28, 2006 (the "Petition Date") -- 23 calendar days *after* termination of the overwhelming majority of the Debtor's California employees.[3]

On February 9, 2007, the Debtor filed its Bankruptcy Schedules. Included in those Schedules is Schedule E—Creditors Holding Unsecured Priority Claims. Schedule E consists of 195 pages, of which the first 193 pages list 772 former employees of the Debtor. Each of those employees is listed as holding priority and, where applicable, non-priority claims for "wages, accrued paid time off (PTO), and/or commissions." No claims under the California and Federal WARN Acts or other provisions of the California Labor Code were scheduled.

On May 1, 2007, the Debtor filed an Amended Schedule E. In Amended Schedule E, the Debtor merely added some additional taxing authorities and listed the known amount of their claims. No changes were made to the scheduled claims of former employees.

As established by Amended Schedule E, for the 772 former employees, the Debtor calculated that they collectively hold approximately $4.07 million in unsecured priority claims (which pursuant to § 507(a)(4) of the Bankruptcy Code are capped at $10,000) and $7.2 million in nonpriority claims for wages, accrued paid time off ("PTO") and/or commissions. In addition, with respect to former employees that were owed amounts for expense reimbursement, those claims were separately itemized and listed in Schedule F—as unsecured non-priority claims.

---

[2] Of course, the WARN Acts, if applicable, are potentially triggered only if the Debtor employed a statutory threshold number of employees at each of its offices. The Complaint fails to establish that such thresholds ever applied during the relevant time periods.

[3] Even after this termination, the Debtor continued to employ numerous other employees in California.

### C. Prior to the June 15, 2007 Claims Bar Date, 558 Former Employees Filed Proofs of Claim.

On March 15, 2007, Debtor filed its "Notice of Motion and Debtor's Motion for Order Establishing a Bar Date for Filing Proofs of Claim or Interest Pursuant to 11 U.S.C. § 501; Declaration of John duHadway in Support Thereof" (the "Bar Date Motion"). Pursuant to the Bar Date Motion, Debtor requested that this Court fix a date as "the last day by which parties may file proofs of *prepetition* claims or interest in this case," subject to certain limited exceptions. *Id*. at pp. 5, 6 (emphasis added). As further explained in the Bar Date Motion:

> [T]he Debtor intends to collect and liquidate certain assets during the pendency of this case, evaluate and pursue claims, and develop a viable plan of reorganization acceptable to the Committee; the Debtor has been making substantial progress in these endeavors. A deadline for filing claims is necessary in order for the Debtor and other parties in interest to determine the total amount, number and types of claims that are asserted against the estate. The setting of a bar date will aid in the wind down of the estate and further administration of the case as promptly as possible."

Bar Date Motion, pp. 5-6, lines 28-6.

On April 10, 2007, this Court granted the Bar Date Motion and entered an order fixing June 15, 2007 (the "Claims Bar Date") as the deadline for filling proofs of claim (the "Bar Date Order"). The Bar Date Order states that the, "[Claims] Bar Date applies to all entities, other than governmental units, holding claims against the Debtor (whether secured, unsecured priority or unsecured nonpriority) that arose prior to December 28, 2006."

Hundreds of creditors timely filed proofs of claim. A review of the proofs of claim filed in this case reveals that of the 772 former employees who were scheduled as holding priority claims for unpaid wages, PTO and commissions, 558 of those employees timely filed proofs of claim. Of those 558 former employees, only about ten appear to have asserted claims under certain provisions of the specific California and Federal employment statutes that are the subject of this adversary proceeding.

### D. Three Months After the Claims Bar Date, the Instant Adversary Proceeding Was Filed.

On September 12, 2007, the three Plaintiffs, on behalf of themselves and as proposed representatives of the class of former employees of the Debtor, filed a complaint. The Complaint contains four separate causes of action. In the first cause of action ("First Cause of Action"), the three Plaintiffs, on behalf of themselves and other proposed class members, seek to recover at least $1,506,000 for "wages earned and unpaid" (the exact same claims that were itemized in Schedule E and were asserted by 558 employees in each of their proofs of claim) and a "penalty in an amount equal to one day's pay rate times thirty days, or not less than $1,506,000 in the aggregate." Complaint, ¶¶ 15, 16. As part of this First Cause of Action, the three Plaintiffs state that they seek "damages and other remedies arising from [the Debtor's] willful failure to pay wages immediately upon employment termination, as required by California Labor Code § 201, including without limitation penalties." Complaint, ¶ 12(a). Plaintiffs admit that all of the terminations that are the subject of the lawsuit occurred well in advance of the Petition Date. Plaintiffs label these claims as "Wage Continuation." Lastly, as part of the First Cause of Action, these three Plaintiffs request an award of attorneys' fees and costs pursuant to California Labor Code § 218.5.

In the second cause of action ("Second Cause of Action"), the Plaintiffs request a judicial determination that their claims for "Wage Continuation" for the period after the Petition Date are entitled to either administrative priority pursuant to § 503(b)(1)(A) or priority status pursuant to § 507(a)(4). Complaint, ¶¶ 19, 7 (Prayer for Relief).

The third cause of action ("Third Cause of Action") seeks damages in the amount of sixty days wages and benefits under the Federal Worker Adjustment and Retraining Notification Act (29 U.S.C. §§ 2101, *et seq*.) (the "Federal WARN Act") and California Labor Code §§ 1400, *et seq*. ("California WARN Act"). As set forth in Paragraph 32 to the Complaint:

> As a result of [the Debtor's] violation of the WARN Act, Plaintiffs and the other members of the Proposed WARN Act Subclass have been damaged in an amount equal to the sum of: (a) their respective lost wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, 401(k) contributions

> for sixty (60) days; (b) the health and medical insurance and other fringe benefits that they would have received or had the benefit of receiving, for a period of sixty (60) days after the dates of their respective terminations; and (c) medical expenses incurred during such period by such persons that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period.

As set forth in Paragraph 7 in the Prayer for Relief to the Complaint, the three Plaintiffs seek $2.4 million in damages plus attorneys' fees and costs.

Finally, in the fourth cause of action ("Fourth Cause of Action"), the Plaintiffs seek a declaration that the "WARN back-pay accruing after the Petition Date" is entitled to administrative priority classification and treatment pursuant to § 503(b)(1)(A) or unsecured priority classification and treatment pursuant to § 507(a)(4). Complaint, ¶¶ 35, 9 (Prayer for Relief).

### E. The Bankruptcy Court Partially Granted the Motion to Dismiss, But Has Yet to Issue an Order on that Motion or Resolve Plaintiffs' Entitlement to Claim and Recover Attorneys' Fees.

#### 1. Motion to Dismiss.

On November 5, 2007, the Debtor filed its Motion to Dismiss the Adversary Proceeding. In that Motion, the Debtor contended that the assertion of both pre-petition and post-petition claims under the Federal and California WARN Acts and the wage claims, including claims under California Labor Code § 203, were time-barred under the Bar Date Order.

Following briefing and two hearings (held on November 29, 2007 and February 6, 2008), this Court issued its "Memorandum of Ruling on Defendant's Motion to Dismiss Under FRCP 12(b)(6)" (the "Memorandum of Ruling"). In the Memorandum of Ruling, this Court ruled that the Claims Bar Date applied to all of the claims asserted in the Complaint.

Near the conclusion of the February 6, 2008 hearing, Plaintiffs' counsel asked this Court to delay its ruling for 35 days to allow him to file a motion to permission to file late claims on behalf of his clients.

### 2. Late Filed Claim Motion.

On February 15, 2008, the three class plaintiffs filed their "Motion for Order Extending Claims Bar Date or, Alternatively, Leave to File Late Claim" (the "Late Filed Claim Motion"). The Trust opposed that motion. After brief and hearing (held on March 11, 2008), this Court granted the Late Filed Claim Motion in part and denied the motion in part. In this Court's April 4, 2008 Memorandum Decision and accompanying Order, Plaintiffs were granted the right to file post-petition claims for alleged violations of the Federal and California WARN Acts, and for claims under California Labor Code § 203. This Court denied Plaintiffs the right to file any "WARN Claims" for any amounts attributable to the pre-petition period. The Court then instructed Plaintiffs to file a motion for class certification by April 18, 2008.

### 3. Remaining Issues on Motion to Dismiss.

Based upon the ruling on the Late Filed Claim Motion, this Court vacated its prior grant of the Motion to Dismiss, but has yet to issue a new order. By virtue of the Court's ruling on the Late Filed Claim Motion, this Court's prior granting of the Motion to Dismiss remains valid, in part. All aspects of the Complaint, and the causes of action therein, in which the Plaintiffs asserted pre-petition claims must be dismissed. By way of example, in the First Cause of Action, Plaintiffs seek the recovery of at least $1,506,000 for "wages earned and unpaid," as well as a full thirty days of penalties under California Labor Code § 203, even though at most seven days of the penalty period falls within the post-petition period. In light of this Court's ruling on the Late Filed Claim Motion, the Motion to Dismiss must be partially granted as to the First Cause of Action. The same applies to the Third Cause of Action, in which Plaintiffs seek a full sixty days of damages under the Federal and California WARN Acts, even though at most only twenty-three (23) days (the actual number of days falling within the post-petition period) remain relevant to the Complaint.[4] Similarly, the Court has restricted any potential class to those former employees who timely filed proofs of claim. The Motion to Dismiss must be partially granted as to all of the

---

[4] The Trust does not concede that the relevant period is 23 days. Under controlling Ninth Circuit law, only "work days" are included. *See e.g.*, *Burns v. Stone Forest Indus.*, 147 F.3d 1182, 1183-84 (9th Cir. 1998). Seven of the 23 days from December 5, 2006 to December 28, 2006 (the Petition Date) were non-work days.

1 causes of action to allow only those former employees who timely filed a proof of claim to be potential members of the class.

### 4. Request for Attorneys' Fees and Costs.

In the Complaint, Plaintiffs requested award and payment of their attorneys' fees and costs. As part of the Motion to Dismiss, the Trust challenged Plaintiffs' legal right to recover those items. A ruling on that issue is outstanding.

### F. While this Court Has Indicated its Willingness to Allow a Class Action on this Claim, It Has Not Set the Parameters of that Class.

On April 18, 2008, Plaintiffs filed their motion for class certification. In that motion, Plaintiffs contend that their claims under the Federal and State WARN Acts and California Labor Code § 203 are suitable for class action status. Following briefing and argument, this Court indicated its preliminary intention to grant the motion. At the May 20, 2008 hearing, this Court continued the motion to allow the parties an opportunity to brief whether the class proof of claim should be structured on an "opt-in" basis.

### G. The Administrative Bar Date, Under the Confirmed Plan, Has Now Passed.

On January 17, 2008, this Court confirmed Debtor's "Third Amended Liquidating Plan of Reorganization under Chapter 11 of the Bankruptcy Code" (the "Plan"). Under the Plan, the deadline for asserting administrative claims was February 28, 2008 ("Administrative Bar Date"). By that date, all creditors were required to have asserted any administrative claims, otherwise those claims would be barred.

In its Memorandum of Ruling on the Late Filed Claim Motion, this Court held that the WARN Claims are prepetition claims subject to the Claims Bar Date. Notwithstanding that the individual WARN Claims (beyond those asserted by Plaintiffs and approximately 10 other former employees) were not asserted by the Claims Bar Date nor the Administrative Bar Date, this Court has tentatively ruled that the Plaintiffs may proceed with a class claim for post-petition WARN liability. Potentially included within that claim are the other former eligible California employees who timely filed proofs of claim by the Claims Bar Date.

As explained herein, establishing a procedure whereby potential class members must affirmatively elect to participate in the class is entirely consistent with the Bankruptcy Code and Rules, the confirmed Plan and the two bar dates that have already passed in these cases. For those creditors who choose not to participate in the class claim, and related class action, the provisions of the Plan will govern and they will be prohibited from asserting any WARN Claims, regardless of priority, against the Debtor, its estate of the Trust.

**III.  ARGUMENT**

    **A.  This Court Has Discretion in Constructing the Class.**

Rule 23(d)(1)(B) of the Federal Rules of Civil Procedure affords this Court the discretion in constructing the class. Rule 23(d)(1)(B) states in part:

> "In conducting an action under this rule, the court may issue orders that: (B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of…(iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action.

Rule 23(d) "grants broad discretionary powers to enable the court to solve novel administrative problems which are posed by the class action device." *Bower v. Bunker Hill Co.*, 114 F.R.D. 587, 596 (E.D. Wash. 1986); *Forbes v. Greater Minneapolis Area Bd. of Realtors*, 61 F.R.D. 416, 418 (D. Minn. 1973) ("Rule 23(d) directly imposes upon the Court an obligation to proceed with flexibility and imagination in structuring the course of a class action"). Indeed, a certified class in a bankruptcy case is rare and, as a result, this Court is presented with novel issues complicated by an already confirmed Plan that fixed a deadline for asserting administrative claims. Unlike civil actions, the tone and procedural cast of a bankruptcy case are not typified by the plaintiff-defendant relationship. Rather, the position of each creditor with respect to the others is as important as the rights of the creditors relative to the debtor. Further, "[a] bankruptcy proceeding is not just another transitory cause of action that serves to adjudicate the rights and obligations of individuals. It is a special procedure by which the debtor seeks the protection of federal law from his creditors." *U.S. v. Michalek*, 54 F.3d 325, 332 (7th Cir. 1995). Although adversarial contests occur within a bankruptcy case, the case itself is not litigation, and, as such,

does not call for the use of litigation tools. *See Windsor Commc'n Group, Inc. v. Grant*, 75 Bankr. 713, 724 (Bankr. E.D. Pa. 1985). This Court should construct the class so that the objectives of bankruptcy law are met.

### 1. Fed.R.Civ.P. 23(d)(2) Empowers this Court to Require Individual Class Members to Elect to Participate in the Class Proof of Claim.

Under Rule 23(d)(1)(B), a court may adopt an opt-in procedure, whereby individual class members are required to file proofs of claim in order to participate in the class action. *See Arey v. Providence Hosp.*, 55 F.R.D. 62, 71-72 (D.D.C. 1972) (opt-in procedure permitted at liability determination stage in Title VII action for discriminatory employment practices); *Iowa v. Union Asphalt & Roadoils, Inc.*, 281 F.Supp.391, 403 (S.D. Iowa 1968) ("in the interests of expediency and fairness to the defendants, the notice of maintenance of a class action should include a provision requiring members to indicate in writing their intent to submit claims.").

Consistent with the Bar Date Order and the Plan, all creditors holding alleged WARN Claims were required to file a proof of claim alleging such claims. Almost none of the potential class members have individually filed a WARN Claim. Requiring potential class members to elect to participate in the class and class claim, at the outset of this litigation, is consistent with the Bar Date Order, the Plan, the Administrative Bar Date, and fundamental procedures concerning the assertion of claims and the claim resolution process.

District courts have held the individual claim-filing requirement to be a valid and important exercise of judicial discretion. In *Smith v. Montgomery County*, 117 F.R.D. 372 (D. Md. 1987), after certifying a damages class of plaintiffs, the court approved an opt-in provision "to enable the court and the parties to determine the scope of the litigation at an early stage." *Id.* at 373. The court held that it is "well established that the issue of manageability of a proposed class action is always a matter of justifiable and serious concern for the trial court and peculiarly within its discretion…" *Id.* at 375 (internal quotations omitted); *see also In re Antibiotic Antitrust Actions*, 333 F.Supp.267, 271 (S.D.N.Y. 1971) (potential class members informed that claims would be barred if proof of claim not completed and returned in prescribed time).

## 2. Bankruptcy Case at Claim-Filing Stage is Analogous to the Damages Phase of a Class Action.

While there is very limited case law that addresses the specifics of class certifications in bankruptcy cases, there is even less authority that addresses the issue of whether WARN claimants should be required to opt-in or opt-out, in order to participate in a bankruptcy class action. However, many of non-bankruptcy courts agree that, where a defendant's liability has been determined, requiring individual proofs of damages is an appropriate and reasonable condition for participation in any recovery. *See Sledge v. J.P. Stevens & Co.*, 585 F.2d 625, 652 (4th Cir. 1978) (after determining that the plaintiff class was entitled to relief, court required all plaintiffs claiming back-pay to file individual proofs of claim and established a cut-off date beyond which such claims would not be entertained).

Other cases have held that, after the determination of exclusion (i.e. after initial "opt-out" notice) or in the settlement stage of a case, an opt-in procedure is appropriate. *Philadelphia Elec. Co. v. Anaconda Amer. Brass Co.*, 43 F.R.D. 452, 459 (E.D. Pa. 1968) ("if [class members] have no intention of proving their individual damages, it is to everyone's advantage to know it early"); *Biben v. Card*, 789 F.Supp.1001, 1004 (W.D. Mo. 1992) (because $2 million settlement was imminent, sufficient incentive for class members to respond to notice).[5]

By analogy, a bankruptcy case at the post-confirmation, and post-administrative claims bar date stage, as here, is similar to the damages phase in a bifurcated class action. All issues of liability under the theories pled in the Complaint will be adjudicated by this Court. Likewise, individual class members rights to share in the limited assets of the Liquidating Trust, and the

---

[5] These cases and possibility of structuring the class as an opt-in class are consistent with Rule 23(c)(4). That rule reads, "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." As explained by the Advisory Committee's Notes to Rule 23(c)(4): "This provision recognizes that an action may be maintained as a class action as to particular issues only. For example, in a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims."

Here, consistent with Rule 23(c)(4), this Court may require individual creditors to make an initial election to be included within a class claim.

amount of each individual class member's claim will be decided by this Court. Thus, for the same reasons that courts consistently allow individual proof of claims after determining liability, this Court should adopt a similar opt-in procedure.[6]

### B. Opt-In Procedure is Appropriate under the Circumstances.

#### 1. Bankruptcy Cases, By Nature, Are Opt-In Quasi Class Actions.

The filing of a bankruptcy case creates an estate in which all of the creditors are entitled to share, pending upon their relative priorities and classifications. *See, e.g.*, 11 U.S.C. § 541. Chapter 11 debtors have the obligation to file schedules listing all of their creditors and the respective amounts owing to those creditors. And if creditors disagree with those claims and/or amounts, they must file a proof of claim by the bar date.

There have already been two bar dates in this case: June 15, 2007 (for pre-petition claims) and February 28, 2008 (for administrative claims). Fixing a third deadline by which potential class members must decide whether they want to join the class claim and opt-in is consistent with the overriding doctrine that individual creditors of a bankrupt company file a claim by the appropriate deadline.

#### 2. Every Individual Employee Has Unique Issues Which She Must Consider Before Being Included in the Class.

The proposed class would consist of individual former employees with unique claims. The individual circumstances of each proposed class member will ultimately determine whether participation in the proposed class is in her best interests. Each member of the class would claim a different amount of owed compensation, wages, and/or benefits and each individual claim will have different tax ramifications. A creditor would be taxed on the amount attributable to their individual claim, before attorneys' fees are deducted (to the extent that is legally permissible). Under these circumstances, the decision to participate in the class is very personal to each former employee. A procedure which allows each former employee to make an informed decision

---

[6] Similarly, class action lawsuits brought under other federal employment laws, including the Fair Labor Standards Act of 1938 ("FLSA"), the Age Discrimination in Employment Act ("ADEA") and the Equal Pay Act ("EPA"), require that potential plaintiffs opt-in if they wish to participate in the litigation and share in any recovery.

**DEFENDANT OWNIT LIQUIDATING TRUST'S SUPPLEMENTAL BRIEF RE USE OF OPT-IN PROCEDURE**

regarding whether they want to participate in the proposed class as opposed to automatically including them unless they choose to be excluded is the correct procedure here.

By way of example, assume an individual former employee is entitled to a $10,000 administrative claim and assume proposed class counsel is awarded 30% of that claim. Under applicable Federal and State law, the Trust would still report the full amount of the administrative claim as income to the former employee and withhold Federal and State taxes for the amount of the administrative claim. Unless that former employee itemizes deductions on her annual taxes (as opposed to taking standard deductions), that former employee may have $3,000 of "phantom income" and then will be taxed on that phantom income. To avoid that situation, the former employee would be required to itemize her deductions. Forcing any of the former employees to itemize deductions on her Federal and State tax returns may be economically harmful to that person.

Since these are financial and personal issues which are unique to each former employee, she must be allowed to consider these issues before being forced to participate in a class action of this type. For that reason, an opt-in procedure is the most appropriate means of structuring this class claim.

### 3. Possible Assessment of Attorney's Fees Against a Creditor's Claim Supports Adoption of an "Opt-In" Procedure.

Plaintiffs' Complaint seeks attorneys' fees and costs pursuant to California Labor Code §§ 218.5 and 1404 and 29 U.S.C. § 2104(a)(6). However, as discussed in Debtor's Opposition to Plaintiff's Motion for Class Certification and the Opposition to the Motion to Dismiss, proposed class counsel is not entitled to assert an administrative claim for any legal services provided to Plaintiffs or the class as a whole. Section 503(b)(1)(A)(ii) of the Code affords administrative classification only to "[w]ages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor…" Section 503(b)(1)(A)(ii) does not authorize the recovery of attorneys' fees and costs as an administrative expense claim against a debtor.

BN 2006613v1　　　13
BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**DEFENDANT OWNIT LIQUIDATING TRUST'S SUPPLEMENTAL
BRIEF RE USE OF OPT-IN PROCEDURE**

The only viable option for proposed class counsel to collect its attorneys' fees is to assess or surcharge any recovery by individual former employees based on the former employees' WARN Claims. Because there is no legal means by which proposed class counsel can surcharge or assess the distributions payable to non-clients to pay class counsel's legal fees and costs without the individual claimants' approval, an opt-in procedure is appropriate. An opt-in procedure would allow former employees to agree to a fee structure with the proposed class counsel or at least provide some legal basis upon which proposed class counsel could surcharge the claims of individual creditors.

## IV. CONCLUSION

An opt-in class is the most suitable means of structuring the proposed class claim. By implementing this procedure, former employees would be given a fair and third opportunity to decide whether they wish to assert WARN Claims—this time in the context of a class claim. For those that decide they want to participate, they will be included in the class. For those that do not want to participate, for whatever reason, those creditors would be excluded from the class and would forever be prohibited from asserting such claims. Since the opt-in procedure affords the Debtor's former employees every right to participate in the proposed class, and is the only procedure consistent with fundamental bankruptcy policies, the opt-in procedure should be applied to any class claim allowed in this case.

DATED: June 9, 2008

BUCHALTER NEMER
A Professional Corporation


By: /Is/ Jeffrey K. Garfinkle
JEFFREY K. GARFINKLE
Attorneys for Defendant
THE OWNIT LIQUIDATING TRUST

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 2006613v1    14
**DEFENDANT OWNIT LIQUIDATING TRUST'S SUPPLEMENTAL
BRIEF RE USE OF OPT-IN PROCEDURE**

# PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is at BUCHALTER NEMER, A Professional Corporation, 18400 Von Karman Avenue, Suite 800, Irvine, California 92612-0514.

On the date set forth below, I served the foregoing document described as:

**DEFENDANT OWNIT LIQUIDATING TRUST'S SUPPLEMENTAL BRIEF RE USE OF OPT-IN PROCEDURE**

on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope as follows:

See Service List.

☒ **BY MAIL** I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. The address(es) shown above is(are) the same as shown on the envelope. The envelope was placed for deposit in the United States Postal Service at Buchalter Nemer in Irvine, California on June 9, 2008. The envelope was sealed and placed for collection and mailing with first-class prepaid postage on this date following ordinary business practices.

☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge. Executed on June 9, 2008, at Irvine, California. I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on June 9, 2008, at Irvine, California.

| Debby Bodkin | /Is/ Debby Bodkin |
|---|---|
| | (Signature) |

## SERVICE LIST

*In Re OwnIt Mortgage Solutions, Inc.*
Adv. Proceeding No. SV 07-01212-KT
(USBK Central District of California, Case No. SV 06-12579)

Daniel I Barness, Esq.
Spiro Moss Barness Harrison & Barge
11377 W Olympic Blvd 5th Fl
Los Angeles, CA 90064-1683
310-235-2468
Fax : 310-235-2456

Gabriel I Glazer, Esq.
1901 Avenue of the Stars
Los Angeles, CA 90067
310-228-5600
Fax : 310-228-5788
Email: gglazer@stutman.com
Successor Trustee
OWNIT Liquidating Trust

Michael Goldstein, Esq.
Christine M. Pajak, Esq.
Stutman Treister & Glatt
1901 Avenue of the Stars
Los Angeles, CA 90067
310-228-5600
Fax : 310-228-5788
Counsel for OwnIt Liquidating Trust

Ira D. Kharasch, Esq.
Linda F. Cantor, Esq.
Pachulski Stang Ziehl, et al.
10100 Santa Monica Blvd.
11th Floor
Los Angeles, CA 90067
(310) 277-6910
Fax : (310) 201-0760
Counsel for OwnIt Liquidating Trust

*U.S. Trustee*
United States Trustee (SV)
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

BN 2007945v1

DEFENDANT OWNIT LIQUIDATING TRUST'S SUPPLEMENTAL
BRIEF RE USE OF OPT-IN PROCEDURE

BUCHALTER, NEMER,
FIELDS & YOUNGER
ATTORNEYS AT LAW
LOS ANGELES